## LITTLE *et al. v.* SINNETT. ·

The words "property to be administered upon," in section 1272 of the Code, includes real, as well as personal estate, and administration may be granted upon the estate of a non-resident decedent, where he owns nothing but real estate in this state.

The liability of the real estate to pay the debts of the decedent, renders it as truly the ground for granting letters of administration, when there is no personal property, as the latter does, when such property of the decedent exists.

In respect to the liability of real estate, to the payment of debts of its deceased owner, and its subject to administration, there is no difference between a resident and a non-resident decedent.

Although the words, "estate to be administered upon," in section three of chapter third of the act in relation to wills, administrators, &c., approved February 13, 1843, may formerly have had a limited application, and have indicated personalty only; yet, under the later laws respecting real estate, their signification must be enlarged, rather than that they should be allowed to restrict the manifest and just sense of the law.

An order or decree of the probate court, upon the allowance of a claim against an estate, as follows: " It is therefore decreed, that the same be allowed ; that the plaintiff recover the sum of $162.12 ; and that the administrator is hereby ordered to pay the same according to law," is but an allowance of the claim, and not a judgment in the technical sense.

Where in a proceeding in chancery to set aside a sale of real estate made by an administrator, a record of the proceedings of the probate court ordering the sale, recites that "it appearing to the court, that all persons interested therein have been duly notified" of the application for an order of sale, such a recitation is evidence, *prima facie*, in a collateral proceeding, that the notice requisite to give the court jurisdiction of the subject matter, and of the persons interested, had been given ; and the fact that no notice is found, is not sufficient to controvert the record.

An application for the grant of letters of administration upon real estate, alone, under the statute relating to wills, &c., approved February 13, 1843, should show that there were debts against the decedent; and if the averment of the existence of debts, is afterwards sustained by the proof, it is sufficient to sustain the order granting administration.

Where a petition for license to sell real estate of a decedent, under the statute of wills, approved February, 13, 1843, alleged that the deceased died seized of certain real estate, describing it, and stating its appraised value ; that the said real estate was all the property of the deceased in the county, as far as known ; and that the debts and charges of administra-

tion amounted to over a certain sum ; *Held*, That the petition showed sufficiently, a necessity for a sale of the real estate of the deceased.

Under the statute of wills, &c., approved February 13, 1843, it was not necessary that the claims against an estate should be proved up and allowed, before an order was made authorizing the administrator to sell the real estate of the decedent; and the allowance of a claim after such order, and before the sale, is sufficient to sustain the prior proceedings.

The evidence upon which a court of probate allows a claim against an estate, need not appear in the record ; and in a collateral action, neither the supreme nor the district court can examine the evidence upon which the allowance of the claim was predicated.

Where the notice of the appointment of an administrator does not name the county in which the appointment was made, such a defect will not invalidate a sale of real estate made by the administrator.

When the jurisdiction of a court of limited jurisdiction is once established, it is entitled to the same presumption in favor of its acts as that of a court superior and of general jurisdiction, and subsequent irregularities in the exercise of that jurisdiction, will not render its proceedings void.

Where a notice of an administrator's sale of real estate, dated June 4, 1847, named no place of sale, and fixed the day of sale on the 26th of June next; *Held*, That without some showing that an ·unusual or improper place was adopted for the sale, or that detriment occurred from the manner of stating the time and place of sale, the defects in the notice were not sufficient to avoid the sale.

*Appeal from the Muscatine District Court.*

MONDAY, DECEMBER 13.

This was a petition in chancery, praying that a sale of real estate, made by an administrator, in the year 1847, may be decreed void, and that the title thereto may be declared to be in the petitioners. The petition represents that Sidney H. Little, at some time prior to September, 1846, died, leaving the petitioners his heirs at law ; and that he died seized of certain lots in the town of Bloomington, (now Muscatine), in the state of Iowa ; that at that time he was a resident of Hancock county, state of Illinois ; that on the 7th of September, 1846, letters of administration were granted to John L. Cummins, by the probate court of Muscatine county, Iowa ; that there were no debts in said county against the said estate, but that

one Abraham Chase pretended to have a judgment against said Little, for one hundred and sixty-two dollars and twelve cents, and pretended to prove the same before the said probate court; that thereupon the administrator obtained license to sell all the real estate of the deceased, and by virtue of such license, sold to Samuel Sinnett the lots in the petition named. The petitioners maintain that the grant of administration, and the sale of the lots, were unwarranted, illegal and void, and pray that the deed to Sinnett may be set aside and cancelled, and that the title may be decreed to be in them, as the heirs at law of the said S. H. Little, which they aver themselves to be.

, The respondent made answer, and such proceedings were had, that a decree of the court was rendered in his favor. The questions made, and the necessary facts leading to them, sufficiently appear in the opinion of the court.

*D. C. Cloud*, (with whom was *Henry O'Connor*), for the appellants, on the various points raised by him, cited the following authorities: Stat. 1845, 39; *Heath* v. *Wells*, 5 Pick., 139; *Thompson* v. *Brown*, 16 Mass., 172; *Makepeace* v. *Moore*, 3 Scam., 319; *Dorman* v. *Fost*, 12 Ill., 130; *Foley, Adm'r*, v. *Wallace*, 2 Carter, 174; *Danzey* v. *Swinney*, 6 Texas, 617; *Carter* v. *Spencer*, 4 Carter, 78; *Scott* v. *Hancock*, 13 Mass., 162; Rev. Stat., 1843, 706; *Bank of Hamilton* v. *Dudley*, 2 Peters, 492; *Williamson* v. *Perry*, 8 How., 538; *Horner* v. *Doe*, 1 Carter, 130; *Hickey* v. *Stewart*, 3 How., 751; *Bliss* v. *Wilson*, 4 Blackf., 169; *Smith* v. *Myers*, 5 Ib., 223; *Wort* v. *Finley*, 8 Ib., 335; *Bloom* v. *Burdick*, 1 Hill, 130; *Shrive's Lessee* v. *Lynn et al.*, 2 How., 43; v. *Elliott* v. *Piersol*, 1 Peters, 328; *Babbitt* v. *Doe*, 4 Carter, 355; *Deming* v. *Corwin*, 11 Wend., 648; *Chase* v. *Hathaway*, 14 Mass., 222; *Cooper* v. *Sunderland*, 3 Iowa, 113; *Morrow* v. *Weed*, 4 Ib., 77; *Weed et al.* v. *Edmonds*, 4 Carter, 468; *Early* v. *Doe*, 16 How., 610; *Moore* v. *Brown*, 4 McLean, 211; *Mahew* v. *Davis*, 4 Ib., 321; *Wellman* v. *Lawrence*, 15 Mass., 326;

*Wilkins, Lessee* v. *Huse et al.*, 10 Ohio, 139 ; *Frothingham* v. *Marsh,* 1 Mass., 254.

*Richman & Brother*, for the appellee, relied upon Rev. Stat., 1843, 713; 1 Story's Eq. Jur., sec. 552; 6 Peters, 709; 2 Ib., 165; 3 Ib., 202; *Guignon's Lessee* v. *Astor*, 2 How., 240; 11 Mass., 227; *Fox* v. *McAckreth*, 2 Bro. C. C., 400; 2 Cox, 320; 5 Vesey, 707; 10 Ib., 481; 8 Ib., 351; 1 Lead. Cases in Equity, 125; *Kriechbaum* v. *Bridges & Powers,* 1 Iowa, 14.

WOODWARD, J.*—This cause is to be adjudicated like those of a similar nature, which have preceded it, by the statute of 1843, chapter 162, sub-chapter 10, 713. The petitioners urge a large number of reasons against the validity of the sale, some of which, however, are without foundation—some are resolvable into others, which are stated—and others relate only to matters falling exclusively within the judicial cognizance of the probate court. Such of them as are deemed material, will be noticed.

I. The complainants first take the position, that administration could not be granted upon the basis of the real estate alone, of a non-resident decedent, for that this can be in but two classes of cases, namely, when the decedent at the time of his death, was a resident of the county, (or the state), and when a non-resident leaves in this jurisdiction property to be administered upon, or when such property is afterwards brought into the county. Code, section 1272. It is urged that the phrase, "property to be administered upon," has acquired a peculiar meaning in the law, and indicates personal property only. It is in some measure true, that this was so at a former period, but the definitions and authorities which were just at one time, and in one state of the law, sometimes cease to be so at another. The statutes which have rendered real estate subject to the

---

* STOCKTON, J., dissenting.

debts of the deceased, have produced a change in the rules which were applicable to this subject. All, or nearly all, of the American states, render the real estate liable to the payment of debts, and our statute of 1843, required the administrator to return an inventory of it. But it is immaterial whether it is to be inventoried or not, its liability to the debts, renders it as truly the ground for granting letters of administration, when there is no personal property, as the latter, when that exists.

It is argued that the real estate is not assetts, although the proceeds of it, when sold, becomes so. This distinction is too light to avail much, for, however true, theoretically, there is but little difference between treating it as assetts in the first instance, and the power to convert it into them. Mr. STORY says : " Whenever real estate is, by statute, made liable for the debts of the deceased, it constitutes legal assetts." 1 Eq. Jur., section 552. The difference between real and personal estate, is really no greater in the case of administration, than under a judgment where the execution must exhaust the personalty first, and then may be levied upon the realty. The idea is not admissible that the creditors must go unpaid, merely because there is no personalty, whilst there is an ample amount of realty. It would lead to the strange conclusion, that if there were a very small and inadequate portion of personalty, administration might be granted, and the realty be reached, but if there were no personalty, nothing could be done.

Again : it has been conceded, that if a resident die, leaving only real estate, administration may be granted ; whilst the opposite is held in the case of a non-resident. This difference cannot be admitted. In such case, the creditors of the one could resort to the realty, whilst those of the other would be forbidden to do the same. Although the terms, "estate to be administered upon," may formerly have had a limited application, and have indicated personalty only, under the latter laws respecting real property, their signification must be enlarged, rather than they be

allowed to restrict the manifest and just sense of the law. The real property is to be affected only in case debts appear, but as these cannot be certainly ascertained until there is administration, this may be founded upon the real estate, together with the representation that there are debts existing.

II.  The complainants object farther, that the probate court had not authority to render a judgment.  This suggestion arises from an erroneous view of the action of that court.  It does not undertake to render a judgment in the technical sense.  That its order, or decree, is but an allowance of the claim, is apparent.  The language of the entry is, " It is therefore decreed that the same be allowed." It is true that it uses the language, " and that the plaintiff recover the sum of $162 12," but the conclusion of the entry of the order is, " and the administrator is hereby ordered to pay the same according to law."

III.  We come now to the objections arising under the provisions of the statute before cited.  Great irregularity and negligence are apparent in the probate proceedings in this case; and such is the appearance of proceedings, got up by a creditor and his attorney merely to satisfy a small debt, by the sale of the real estate of a non-resident decedent, without due regard to the interests of the heirs— that if these things afforded legal ground to disregard an innocent and *bona fide* purchaser, or if this court were not bound by rules, there would be strong inducement to dispose of the case upon those circumstances, without applying the strict test of the law and the statute.  But it was, probably, in part, to guard the purchaser in just such, and similar cases, that the statute, as it is, was enacted.

The statute of 143, (chapter 162, sub-chapter 10, section 36), provides that sales by administrators shall not be avoided, if certain things appear, the first of which is, if the sale was ordered by a court of competent jurisdiction. The petitioners, in the present case, hold that the court ordering the sale was not such.

The question, what is implied in the words, "a court of competent jurisdiction," used in this statute, may become an important one. There is room to argue that they import no more than a court having jurisdiction over the subject of administration. And there is still more room for contending, that they imply no more than that it should be shown, that the court had jurisdiction to grant letters of administration in the particular case; that then full credence is to be given to the remaining proceedings; and that no subsequent irregularity will invalidate them, and that every presumption is to be made in its favor. *Cooper* v. *Sunderland*, 3 Iowa, 125; *Morrow* v. *Weed*, 4 Iowa, 88. A third, and the most strict ground to be taken would be, that it must be shown that the court not only had jurisdiction to grant letters, but also in the particular matter of licensing the sale. Much of the law, and many of the authorities on this question, as it exists, independent of the statute, is referred to in *Cooper* v. *Sunderland*, 3 Iowa, 116, but it is not determined there. Nor do we wish to discuss it in the present case, being willing to try the case by the most stringent of the above modes of construction, leaving the final determination of that question for a cause which shall demand it.

To the competency of the jurisdiction in this case, several objections are presented. *First.* It is said that the requisite notice of the presentation of the petition for leave to sell, does not appear to have been given. This objection is made, probably, because such a notice does not appear among the papers constituting the files of the case. But the record of the proceedings of the court has the following language: "And it appearing to me that all persons interested therein have been duly notified thereof," which follows an order of the court that twenty-one days notice be given. We have seen in *Cooper* v. *Sunderland*, that such a recitation is evidence, *prima facie*; that by this the fact "appears," unless it is positively contradicted, (if this can be done); and the negative fact that such a notice is not found, is not sufficient to controvert the record.

Little et al. v. Sinnett.

The petitioners next object that there was no necessity, and that the petition for leave to sell does not show a necessity for selling the real estate ; that there were no debts due to any one ; and that the claim presented, was not against the estate of Little. These will be considered together, for convenience, as the same portions of the record relate to them respectively.

When there is personal property, administration is granted, as of course. But it is not so in respect to real property. This descends to the heir, in the first instance, but subject ultimately to the debts. The administrator has nothing to do with it, unless it be found that it is required for the payment of them. Therefore, in an application for the grant of letters of administration upon real estate alone, it should appear that there are debts. This is done in the present case. But the reality, and the validity of the claim set up, is denied. This will be further noticed hereafter. For the present, we only remark, that it cannot be contended that the claims must be proved, before letters can be granted, for they cannot be proved until there is an administrator. If the averment of the existence of debts is afterward sustained by the proof, it is sufficient. The statute before cited, (sub-chapter 10, section 1), provides that when the goods and chattels are insufficient for the payment of the debts, the realty may be sold ; and section 3 denies that, in order to obtain a license therefor, the administrator shall present a petition, setting forth the amount of the debts, " as nearly as they can be ascertained," and the charges of administration, and the value of the personal estate. If the facts set forth in the petition shall be proved to the satisfaction of the court, and if no sufficient cause be shown to the contrary, the court shall grant the license.

The petition for license represents, that the deceased died seized of the following real estate, describing certain lots in the town of Bloomington, with their appraisement value; that the debts and charges amounted to over one

hundred dollars; and that the "said lots were all the property of the deceased in said county of. Muscatine, so far as known." From this petition, it as manifest that there is no personal property, as it would be, if stated in express words. And the debts and charges are put at one hundred dollars, and above. This must be taken as the definite amount ascertained. That they proved, ultimately, to be more, and that the previous petition had stated a claim of a larger amount, cannot affect the case. That petition was not presented by the administrator. Neither can it have any effect, that the amount of charges is not stated separately. The main object is to show that these, with the debts, are more in amount than the personalty. We have seen, in *Morrow* v. *Weed*, 4 Iowa, 78, that a strictly literal observance of similar requirements, is not essential to validity, but that an equivalent, or a substitute, is admissible to some degree.

We are of the opinion that this petition is sufficient, as showing the legal conditions for a sale. And the court, in acting upon it, says: "Upon the petition of the administrator, showing that the personal property of the deceased is insufficient for the payment of debts, and it appearing to me that all persons interested therein have been duly notified thereof, and that it is necessary to sell so much of the real estate of said deceased as will raise a sum sufficient to pay his just debts, and incidental charges;" therefore, it is ordered that the administrator make such sale. Thus, the court directly adjudicated upon, and declared, the necessity of a sale of the realty for the payment of the debts.

But, *Thirdly.* The petitioners aver that there was no debt proven or allowed, at the time of granting the license, and that the claim presented was not against the estate of Little. This last assertion is based upon the circumstance that a paper was filed which was a transcript of a judgment in Illinois, recovered by Abraham Chase, against I. N. Morris and C. A. Warren, in which the name of Little did not appear. The error of complainant lies in assuming that the district court, or this court, can look into the

evidence going to sustain the claim of Chase against Little, and the that evidence should appear in the probate record. All that is necessary is, to suppose that there was evidence showing a connection between Little and this record. We may suppose the case stated in the answer, that Little, as an attorney, received the money on that judgment, and had not paid it over. The evidence to prove this, would not appear in the probate record. This, together with the filing of a claim against Little, based upon this, is to be presumed after the court has found and allowed the claim against him. This is the common principle acted upon, when all those facts are presumed, which are requisite to be proved, in order to the finding the verdict.

It is true, that this claim had not been allowed, when the license to sell was granted. This objection implies that the debts must be proved up, before leave to sell can be given, and perhaps before a petition for that purpose can be presented. This is not necessary. The statute referred to, (section 3), says the administrator shall state the amount of debts, " as nearly as they can be ascertained." This does not imply that they are already proved, but the contrary, and that he is to ascertain the amount in such manner as he is able, and make his representation upon such ascertainment. If the case should occur, in which no debt was allowed in the end, it would present a difficult question, but it is sufficient if it appear that debts did exist, in fact, and they were ultimately allowed before the sale, as in this case.

It would probably prove impracticable to have the debts finally ascertained before an order of sale could pass. At least, it would be the cause of great delay in the settlement of estates. And this might prove true, even if one claim must first be adjudicated, if that one were a contested demand. The law undoubtedly contemplates the natural working of a business of this character, and designs that the indebtedness of the estate should be ascertained, *in pais*, as it were, and that the presentation may be made

upon this basis.   It is hardly to be supposed that the ad-
ministrator would proceed to a sale, before he was satisfied
that it was indispensable.   And should he even do this—
and should the result show that it was not required, cases
are not wanting which would go far to uphold the sale,
upon the ground of representation and the order.   But we
do not undertake to determine the consequence of such a
state of things.   We are satisfied that the allowance of the
debt at least, as it proved that a debt was existing when the
order passed, was sufficient to uphold the prior proceed-
ings; and also, that, in this collateral action, neither this,
nor the district court, can examine the evidence upon which
the allowance of the claim was predicated.

These are the only objections of weight, going to the
question of the competent jurisdiction of the court, and
examined by the most strict of the rules by which it may
be tested, it is not found wanting.

IV.   Another reason urged for holding the sale void, is
that the notice of the appointment of the administrator,
does not name a county in which the appointment was
made.   An undue importance is here given to this fact.
Admitting it to be as stated, it could not, by any means,
invalidate the sale.   Nor could it, if no notice of the ap-
pointment was given.

We cannot follow the objections made by the complain-
ants to this sale, into the detail.   They are pressed to an
extent which is not sustained in regard to the proceedings
of a judicial tribunal, whether general or limited.   The
larger portion of them, come directly, or indirectly, within
the scope of those which have thus far been considered.
It is not consistent with either the cases adjudicated, or
with the principles which govern, and should govern, in
those of this class, to hold that every irregularity will in-
validate the proceedings.   There are no rules better estab-
lished than that, when the jurisdiction of even a limited
court is once established, it is entitled to the same presump-
tion in favor of its acts with a superior one, and that sub-
sequent irregularities will not render its proceedings void.

Little et al. v. Sinnett.

These principles cover many of the defects which are usually pointed to as fatal errors, in cases of this nature ; and they cannot be abandoned without sacrificing our security and some of our best interests. Cases come even before judicial tribunals, bearing characteristics which prompt a desire to overthrow what has been done ; but this may not be, even in cases apparently flagrant, at the expense of rules which have become landmarks and bulwarks in the law. Such causes must still be tried in the same measure with others.

V.. Finally : another objection to the proceedings is, that there was no legal notice of the sale, which is one of the requirements of the statute. There is a notice, but the complainants hold it to be bad and insufficient. First, it is dated the 4th of June, 1849, and notifies the sale as of the " 26th of June next." The court cannot consider this as sufficient to invalidate the sale. However the like mode of stating a time might be regarded in a promissory note, or other instrument, it is not possible that any mistake should occur in a matter of the present nature. Thus, to extend it over a year would run beyond the life of the power. The law provides that the license shall have force but a year. Then, it would be an unusual and remarkable course to appoint the time of a sale more than a year in advance, and it would be as unusual as strange. In such a matter, no one would consider the month intended as the June of the next year.

Another objection to the notice is, that it does not name a place. The town is named twice, one of which instances must refer to the sale, and the other to the locality of the property. But no place in the town is mentioned. We might doubt whether the same rule, in this respect, is to be applied to a small village, which might be to a large city, whose population equalled a county, or even a state. But without a showing that mistake occurred, or that an unusual or improper place was adopted, this imperfection cannot be regarded as sufficient to render the

notice void, and to overturn the sale. If some actual det-
riment were shown to result from the manner of stating
the time, or the place of sale, it might put the case in a dif-
ferent light, but without this, and regarding only the face
of the paper, it is difficult for a court of equity to hold
these things fatal, when it seems almost apparent that no
real harm was wrought to any one.

A few other points, of less importance, are suggested,
but they are substantially involved in what has been said,
and the time given to the case forbids any further detail.
The decree of the district court is affirmed.