SCHLARB *et al.* v. HOLDERBAUM *et al.*

SHRIVER v. THE SAME.

1. **Estate of Decedents :** EQUITABLE ACTION BY CREDITORS TO SELL LANDS TO PAY DEBTS : LAPSE OF TIME. Where a will was probated November 10, 1879, but certain claims against the estate were litigated, and were not finally established and allowed until September 6, 1888, and November 23, following, the claimants brought their action in equity to compel the sale of real estate to pay the debts due them, the executor having improperly failed to do so, *held* that the action was not barred by the lapse of time.

2. ———— : HOMESTEAD IN LIEU OF DOWER : ELECTION : WHAT AMOUNTS TO. Where a widow did not elect to take under her husband's will, and did not have her distributive share in his lands set apart to her, but for a period of more than six years, and until her death, continued in possession of a portion of the land which included the unplatted homestead, *held* that her conduct amounted to an election to take the homestead for life in lieu of dower. (Compare *McDonald v. McDonald,* 76 Iowa, 137.)

3. ———— : HOMESTEAD TAKEN IN LIEU OF DOWER : DESCENT. Where a widow elects to take the homestead for life in lieu of dower, under section 2008 of the Code, she has no such interest in it as that at her death it descends from her to her heirs.

*Appeal from Madison District Court.*—HON. A. W. WILKINSON, Judge.

FILED, MAY 31, 1890,

PLAINTIFFS in the case first entitled bring their action as heirs at law of Rachel Holderbaum, deceased, to have their interest in her distributive share in the estate of her deceased husband, M. Holderbaum, set off to them. W. R. Shriver, as the administrator of the estate of Adam Hochstetler, deceased, and Josiah Hochstetler intervened as creditors of the estate of M. Holderbaum, and ask that, of the lands which said M. Holderbaum died seized, a sufficient amount be sold to pay the debts - due to them. In the other action

said creditors ask the same relief. The cases were submitted together in the district court, and decree entered dismissing the petition of Eliza Schlarb *et al.*, plaintiffs, and ordering a sale of the lands, other than the homestead forty, to pay debts. Said plaintiffs and A. C. Holderbaum appeal from so much of the decree as dismisses the petition and orders a sale of lands. Intervenors Shriver, administrator, and Josiah Hochstetler appeal from so much of the decree as relieves the homestead forty from sale.

*Ruby & Wilkin* and *Kauffman & Guernsey*, for appellants.

*T. O. Gilpin*, for A. C. Holderbaum.

*John Leonard & Son*, for Josiah Hochstetler.

*V. Wainwright*, for Shriver.

GIVEN, J.—I. M. Holderbaum died June 24, 1879, seized of eleven hundred and twenty acres of land in Madison county, subject to certain mortgage incumbrances thereon. He left Rachel Holderbaum, his widow, and Eliza Schlarb, M. S., S. H., Henry D., Sophia, Lucinda and A. C. Holderbaum, his children, and two grandchildren, Henry A. and David Hochstetler, his heirs at law, surviving him. M. Holderbaum left a will, which was duly probated, November 10, 1879, wherein he provided for the sale of lands other than "the home place" to pay incumbrances. The will also provided that "the home place, containing one hundred and sixty acres," together with two teams and certain farming utensils, should remain in the possession and control of his wife, Rachel, "for the use of the family as a home, and for their support, any overplus remaining to be used in the payment of indebtedness." It also provides that the widow shall have one-third of all that remains after the payment of debts, "unless said sum should be less in amount than the said homestead; then and in that case it is my will that she hold

said homestead, and, if her share is given in land, I
desire that she have the full one-third thereof in value."
At and prior to his death M. Holderbaum resided upon
the one hundred and sixty acres spoken of as the
"home place," and after his death his widow and the
children remaining at home continued to reside thereon
until the death of Rachel, February 4, 1886; she never
having consented to take under the will as provided in
section 2452 of the Code, nor had her share set off. The
claims of Shriver, administrator, and of Josiah Hoch-
stetler, were finally established and allowed, September
6, 1888, on appeal to this court, in *Schriver v. Holder-
baum,* 75 Iowa, 33.

II. Appellants' (the heirs') contention is that
Shriver, administrator, and Josiah Hochstetler, are

1. ESTATE of
decedents:
equitable ac-
tion by cred-
itors to sell
lands to pay
debts: lapse
of time.

too late in demanding relief sought by them,
for that more than ten years transpired
between the probating of M. Holderbaum's
will and their demand for the sale of real
estate. *McCrary v. Tasker,* 41 Iowa, 255,
cited by counsel, was an application by an administrator
*de bonis non* made thirteen years after notice by the
former executor of his appointment, and more than
seven years after his discharge, for leave to sell real
estate to pay debts. The court held that, as a general
rule, such applications would not be sustained unless
made within eighteen months from the time the exec-
utor gave notice of his appointment, unless the peculiar
circumstances of the case are of such character as to
make it the duty of a court of equity to depart from
this general rule; and that, under such circumstances,
the application may be made within a reasonable time.
This application is by creditors, and because of the
executor having failed to so proceed for the payment of
the debts due to them. If the application was by the
executor we think the facts with respect to these claims
are such as should take them out of the general rule.
*Little v. Sinnett,* 7 Iowa, 324, is cited as showing that
leave to sell real estate may be asked before the debts

are proven. Such is the rule as to executors and administrator, but surely it cannot be applied to creditors who proceed by equitable action to compel the sale of real estate to pay the debts due them, where the executor has improperly failed to do so. The right of a creditor to so proceed rests upon the fact that he has an established claim. The claims of these creditors were not established until September 6, 1888, and on November 23, 1888, action was commenced asking for the sale of real estate to pay debts, and on December 6, 1888, they intervened in the action first entitled, asking the same relief. There was not such delay on the part of these creditors as should bar them from now presenting their application for the sale of real estate to pay debts due them.

III. The principal contention is whether Rachel Holderbaum died seized of her distributive share in the

2. ——: homestead in lieu of dower: election: what amounts to.

real estate of her deceased husband, so that such share passed to her heirs at her death. It is contended on behalf of the creditors that Mrs. Holderbaum's occupancy of the homestead was such as to constitute an election to take the homestead in lieu of her distributive share, she not having consented to take under the will, nor asked that her distributive share be set off to her. It is contended on behalf of the heirs that one-third of the real estate vested in Mrs. Holderbaum immediately upon the death of her husband, subject only to such mortgages thereon as she had joined in making; that not having consented to take under the will, nor elected to take the homestead in lieu of her distributive share, she never became divested of that share; that she was entitled to elect whether she would take the homestead in lieu of her share at any time before the estate was finally settled; that it is not finally settled yet; that her occupancy was of the entire one hundred and sixty acres, and in accordance with the will, and, therefore, no inference arises of an election to take the homestead in lieu of her distributive share. There is no question but that

Mrs. Holderbaum, as head of the family, did continue to occupy the dwelling-house used as a homestead. Whether the barn was situated on the same forty acres or not is not material, as she had a right to have the homestead platted in any form she might desire so as to include the dwelling. Code, secs. 1998, 1999. As she did not consent to take under the will, nor to have her share set off, she had no right to occupy more than the homestead. If she occupied the entire one hundred and sixty acres, including the homestead, that would not defeat her right to the homestead, nor the inference that arises from that occupation that she elected to take the homestead. *Stevens v. Stevens*, 50 Iowa, 491. It might be questioned, under the testimony of the executor, whether he did not occupy the one hundred and sixty acres other than the homestead; but, as possession of the dwelling as a homestead drew with it whatever of the land that was exempt as such, we think it is clear that Rachel Holderbaum was in possession of the homestead. That it had not been platted did not defeat her right to hold whatever, under the law, might be platted as a homestead. *Thomas v. Thomas*, 73 Iowa, 657, simply held that, in proceedings for partition, the widow will not be required to elect whether she will take dower or homestead until the debts against the estate and legacies are found to be fully settled, because, as to the heirs, it cannot be known what their shares of the land will be until it is known what of it, if any, will be required for the payment of the debts. The contentions in this case are fully answered in *McDonald v. McDonald*, 76 Iowa, 137. Thomas McDonald died, owning five hundred and sixty acres of land, forty acres of which was his homestead, which the widow continued to occupy and enjoy. Subsequent to the death of her husband she executed a mortgage on the undivided one-third of all the land to secure a debt owed by her. One of McDonald's heirs sought partition of the real estate, subject to the homestead right of the widow. The mortgage having been foreclosed, and the undivided one-third purchased by the appellant, he claimed

the same by virtue of such purchase, He claimed that the distributive share of Mrs. McDonald vested absolutely in her, in fee simple at the death of her husband ; or, if not, that the mortgage showed an election on her part to take such share. The court said : "Upon the death of her husband two rights in and to the real estate of which her husband had died seized vest in the widow. One is to occupy and enjoy the homestead for life, and the other to take a distributive share of one-third in fee simple of such real estate. She cannot take both, but she can elect which she will take. Therefore, it is not strictly correct to say that either right or estate vests in her absolutely, upon the death of her husband. If one does, so does the other; and either will be divested when an election is made." In speaking with reference to the same cases to which our attention is called it was said : "In all of the cases the question involved and determined embraced the homestead right of a surviving husband or wife, and the logical deduction to be drawn therefrom is that, when the surviving husband or wife continues to occupy and enjoy the homestead, this must be regarded, as long as he or she does so without having his or her distributive share set apart, as an election to take the homestead in lieu of a distributive share. Some certain and definite rule should be adopted, and we think the better construction of the statute is that, until the distributive share is set apart, the surviving husband or wife, by occupying the homestead, must be regarded as having elected to take it. It follows, therefore, as Mrs. McDonald was occupying the homestead at the time the mortgage was executed, that the latter did not create a valid charge on the same. It is said that in all the cases last cited no other property than the homestead was involved, and, therefore, this case is distinguishable ; but this is a mistake. In *Darrah v. Cunningham*, 72 Iowa, 123, fifty-eight acres of land were involved." Our conclusion is that as Rachel Holderbaum did occupy the homestead up to the time of her death, without consenting to take under the will, or asking that her

Schlarb v. Holderbaum.

distributive share be set off to her, she must be taken to have elected to accept the homestead in lieu thereof.

IV.   Shriver, administrator, and Josiah Hochstetler, in support of their appeal, complain of so much of the decree as reserves the homestead forty acres to any of the heirs of Michael Holderbaum.   Code, section 2008, provides:   "But the survivor may elect to retain the homestead for life in lieu of such share. in the real estate of the deceased; but, if there be no such survivor, the homestead descends to the issue of either husband or wife, according to the rules of descent, unless otherwise directed by will, and is to be held by such issue exempt from any antecedent debts of their parents or their own."   As already stated, Rachel Holderbaum, acting under this statute, elected to retain the homestead for life in lieu of her share in the real estate of her deceased husband.   It follows that as to this homestead she had no interest or estate therein to pass to her heirs at her death.   Eliza Schlarb and those joining with her in their appeal asked relief in virtue of their rights as heirs at law of Rachel Holderbaum.   As she had no interest in the homestead beyond the period of her life, these appellants can take nothing therein as such heirs.   If we may regard these parties as making claim to the homestead as heirs of M. Holderbaum, the answer is that it is otherwise directed by his will.   We need not determine whether, in the absence of a will, this homestead would descend to the heirs to be held exempt from antecedent debts.   It is not clear to us whether it was intended by the decree to exempt the homestead forty from sale, or only to reserve it until the other lands were exhausted.

Our conclusions are that the decree of the district court should be affirmed upon appeal of Eliza Schlarb and those joining with her, and should be modified on the appeal of Shriver, administrator, and Josiah Hochstetler, so as to require the sale of the homestead forty, if necessary, after first exhausting the other lands.

AFFIRMED.

*Margin note: 3. —— : homestead taken in lieu of dower: descent.*