OF

## CASES AT LAW AND IN EQUITY,

DETERMINED BY THE

# SUPREME COURT

OF

## THE STATE OF IOWA,

AT

## DES MOINES, MAY TERM, A. D. 1892,

AND IN THE FORTY-SIXTH YEAR OF THE STATE.

---

IOWA LOAN AND TRUST COMPANY, Appellee, v. A. C. HOLDERBAUM, Executor, *et al.*, Appellants.

1. **Practice in Supreme Court**: PARTIES: SUBSTITUTION. Where, after entry of decree in a cause, wherein an executor was a party defendant, said executor was removed, and letters of administration, with will annexed, were issued to another, *held*, that the administrator being a proper party, he might be substituted as a party defendant upon motion in the supreme court.

2. **Wills**: CONSTRUCTION: POWERS OF EXECUTORS. Where, by the provisions of a will, an executor was given power to manage and control the real and personal property of the estate in such manner "as to realize the largest and best income therefrom, and in paying off the indebtedness on said real property," and for such purpose was authorized to mortgage said real estate, *held*, that the real estate could be mortgaged only for the purpose of paying the indebtedness thereon.

3. ——: RIGHT OF TESTATOR TO DIRECT MANNER OF ADMINISTRATION: RIGHTS OF CREDITORS. Under the provisions of section 2406 of the Code, permitting a testator to prescribe the manner in which his estate shall be administered, when the interests of creditors will not

be prejudiced thereby, a provision in a will, directing the executor thereunder, after exhausting the personal property, to pay the indebtedness of the estate by mortgage upon the testator's real estate, and directing that said real estate should not be sold for such purpose unless by the sale of not to exceed one-half section of land enough could be realized to pay all liens upon the real estate, is valid.

4. ——: ——: MORTGAGE BY EXECUTOR SUPERIOR TO CLAIMS OF CREDITORS. A mortgage given by an executor under the authority of such a provision in a will is a superior lien to that of creditors whose claims have been established against the estate.

5. ——: ——: ASSENT OF CREDITORS. Where an executor, acting under the directions of the will appointing him, executed mortgages upon the real property of the estate for the payment of debts, and such action, and the application of the fund thus acquired, was shown in the annual reports of the executor from year to year, and no objection was made thereto by the devisees or creditors for the period of seven years, *held*, that a mortgage so given, which was not known to be prejudicial to the rights of creditors when executed, would not be held invalid because in the end it proved prejudicial.

6. ——: ——: NOTE OF EXECUTOR: FORM: MORTGAGE. The fact that a note given by one as executor is in the form of a personal obligation, will not prevent the enforcement of a mortgage given to secure said note by the executor upon the property of the estate, where it appears that such obligation was made, and the money obtained thereunder was used, by the executor for the benefit of the estate.

7. ——: ——: CONSTRUCTION: AUTHORITY TO RE-MORTGAGE. Under the provisions of the will above recited, the executor might re-mortgage the property of the estate to pay off a mortgage previously given by him upon the same land.

8. ——: ——: MORTGAGE: RIGHTS OF MORTGAGEE: JURISDICTION. The rights of a mortgagee under a mortgage given by an executor upon such authority, cannot be divested by an order of the probate court for the sale of the mortgaged property, made upon the application of creditors in a proceeding to which the mortgagee was not a party.

9. ——: ——: ——: ——. Neither can the rights of such mortgagee be prejudiced by the executor's misapplication of the fund thus obtained.

10. ——: ——: MORTGAGE BY EXECUTOR WITHOUT ORDER OF COURT: VALIDITY. An executor, acting under the authority of a will duly probated, may execute a mortgage without the order of court, where the conditions upon which the exercise of such authority are dependent, exist at the time of the mortgage.

11. ——: ——: MORTGAGE: DIVERSION OF FUND BY EXECUTOR. A portion of the money received by the executor under the mortgage in question, was, contrary to the terms of the will, applied upon the

payment of an indebtedness which was not an incumbrance upon the lands of the estate. *Held*, that the diversion of the fund by the executor being after the loan was made, and without the fault of the mortgagee, it did not affect the validity of the mortgage as to such portion of the mortgage indebtedness.

*Appeal from Madison District Court.*—Hon. O. B. Ayers, Judge.

Friday, May 27, 1892.

Michael Holderbaum died, testate, in June, 1879, leaving as a part of his estate one thousand, one hundred and twenty acres of land in Madison county: By the terms of the will, the defendant A. C. Holderbaum was made executor. Under the provisions of the will the executor borrowed from the plaintiff three thousand dollars, and gave his note therefor, as executor, secured by a mortgage on one hundred and sixty acres of the land belonging to the estate. Because of a default in payments, this action is brought to foreclose the mortgage. The defendants include the heirs and creditors of the estate or their representatives. The issues present many questions, among which are those requiring us to determine the effect of the language in the will permitting the executor to mortgage the land, and the validity of such a provision when made. The district court held, in effect, that the will authorized the execution of the mortgage and decreed it valid. It, however, excluded a part of the loan from the operation of the mortgage as being in excess of the authority granted by the will. From a judgment entered in harmony with that view both parties appeal, the appeal of defendants being first taken. Upon plaintiff's appeal, *reversed;* upon defendants' appeal, *affirmed.*

*Dudley & Coffin* and *D. F. Witter*, for plaintiff.

*John Leonard & Son* and *Gatch, Connor & Weaver*, for defendants.

GRANGER, J.—I.  Since the entry of the decree in the district court, A. C. Holderbaum was by a proceeding in that court relieved from duty as executor of the estate of Michael Holderbaum, and the action of the district court was, on appeal, affirmed in this court.  F. D. Campbell was duly appointed and has qualified as successor, and the plaintiff moves to substitute F. D. Campbell as administrator with the will annexed as party defendant in lieu of A. C. Holderbaum.  The motion meets with resistance, but we think it should be sustained.  Our views upon the main propositions in the case will indicate the reasons for our conclusion.  The administrator is a proper, if not a necessary, party.  No prejudice can result from the substitution.

*1. PRACTICE in supreme court: parties: substitution.*

II.  We now notice the provisions of the will as to what the testator intended, without reference to the validity of his act.  The following are the important provisions in this respect:

*2. WILLS: construction: powers of executor.*

"Item 2.  I desire that all my just and equitable debts be paid out of the first realized assets of my estate.  *  *  *

"Item 3.  I desire that my executor, hereinafter named, shall stand in my place and stead for the purpose of managing and controlling my real and personal property in such a way and manner as to realize the largest and best income therefrom, and in paying off the indebtedness on said real property.

"Item 4.  I desire that my said executor, for the purpose expressed in item 3, shall have full power and authority to negotiate a loan or loans for the purpose of meeting said indebtedness on said real estate, and to make and execute a mortgage or mortgages on part of said real estate, and generally to do and make and execute such paper or papers as shall or may be for the best interest of my said estate, as I might or could do for the same purpose, limiting my said executor as to

mortgages, so that no new mortgage shall be given on the quarter section known as the 'Home Place.'

"Item 4½.   I desire that my personal property and proceeds from real estate be first used to pay off indebtedness, and real estate not to be so used unless my said executor should find that by disposing of a portion of said real estate, not to exceed a half section (exclusive of the home place), he could realize enough to pay off all liens on said real estate.   Then, and in that case, I desire my said executor to dispose of so much of said real estate (exclusive of the home place) as shall pay such incumbrance as may remain unpaid, instead of procuring new loans, and in this, as in all matters, to do all for the best interest of the said estate."

It is very manifest that the testator intended that the indebtedness of his estate should be paid by his executor taking and controlling his real and personal property in a way to secure the largest "income therefrom."   The will places no limitation on the right of the executor to dispose of personal property, but it does as to real estate, limiting the amount of sales to one half section exclusive of the home farm.   Such a sale is permitted providing the proceeds thereof shall be sufficient to remove all liens on the real estate. Although not free from doubt, we conclude that the intent of the testator was that mortgages on the real estate should only be given "for the purpose of meeting said indebtedness on said real estate."   To that extent the executor possessed a discretionary power to make loans and secure them by mortgage.

III.   We next inquire as to the validity of such a provision, and upon this question there is a vigorous contention; it being urged by the defendants that at the death of the testator the law fixed the rights of devisees and creditors, and that any provisions of the will prejudicially affecting such rights are of no force; the

3. ——: right of testator to direct manner of administration: rights of creditors.

precise point as to creditors being that the law creates
a lien on real estate for the payment of claims filed and
allowed as provided by law, and that no testamentary
act can defeat the lien.   This claim by the defendants
has reference to the laws providing how claims against
an estate shall be established, and how the property of
the estate shall be applied in satisfaction of them; it
being found that the personal estate shall be thus
applied, and, if "found inadequate to satisfy such debts
and charges, a sufficient portion of the real estate may
be ordered to be sold for that purpose."

We know of no provision of the statute creating a
specific lien upon real estate for the payment of estab-
lished claims.   If there is a lien, it is one resulting
from the provisions by which the property, both real
and personal, is under the directions or orders of the
court to be applied to such a payment.   There can be
no question but that the law contemplates that the
property not exempt should be used to pay the debts of
the estate, so far as it is needed.   The law undertakes
to provide how it shall be so used, and upon this par-
ticular point we think the defendants misconceived the
true spirit of the law by omitting a part of it.   In the
absence of a method being provided in a will, the law
fixes one, and that one is the usual method by which
the personal property is first applied, and for remain-
ing debts the court orders real estate to be sold, and
payment made from the proceeds.   The law, however,
contemplates that a testator may provide the manner
in which his estate shall be administered.   The follow-
ing is section 2406 of the Code:

"When the interest of creditors will not thereby
be prejudiced, a testator may prescribe the entire man-
ner in which his estate shall be administered on; may
exempt the executor from the necessity of giving a
bond; and may prescribe the manner in which his
affairs shall be conducted until his estate is finally set-

tled, or until his minor children shall become of age."

The provisions of the sections are very liberal to the testator, with the limitation that their exercise must not be to the prejudice of creditors. How the question is to be settled as to whether or not the manner prescribed is or would be prejudicial we are not considering. It will be noticed hereafter. We refer now only to the legal right of a testator to provide a method of settling his estate other than by the sale of property, as the law contemplates when no different method is attempted; or we may, perhaps, better meet the case in hand by saying we refer to the legal right of a testator to provide that his real estate may be incumbered by mortgage for the payment of his debts, when by so doing the interests of creditors will not be prejudiced. To determine this it is only necessary to inquire if such an act would come within the purview of the language of the section giving him the right to "prescribe the entire manner in which his estate shall be administered on" or "in which his affairs shall be conducted until his estate is finally settled." We think such a provision would be, to the extent of the requirement, prescribing the manner of the administration, and clearly permissible under the law. Such a construction comes both within the letter and spirit of the statute, and has the support of its being an equitable rule of administration. Why, we may add, should not the owner of real estate, which he may have acquired with a special view to inheritance, to be possessed and enjoyed by his heirs, and which may constitute his entire property available to pay his debts, provide for their payment by an incumbrance thereon, and leave to his heirs the discharge of the incumbrance? That he may do so is sustained both upon reason and the authority of the statute cited.

IV. Having determined that a testator may prescribe such a manner of administration, we should next

4. ——: ——:
mortgage by
executor
superior to
claims of
creditors.

determine whether or not claims of creditors are liens prior to that of such a mortgage when executed. Without saying that claims merely established against the estate are ever liens on the real estate, we think a proper construction of the statute would not give them a priority over such a mortgage, but that the mortgage would be a lien superior to such claims. It should be kept in mind that the mortgage incumbrance is one created by the administration, and is a means of raising money to aid in settling the estate. It is a means provided by the law whereby the real estate is used in the settlement. In a very significant sense it may be said that the real estate, to the extent of the incumbrance, has been exhausted, and the proceeds used in payment of debts. We may aid the thought by the supposition that the loan secured by the mortgage is the entire value of the land,—all that it could be sold for under an order of the court. With such a state of facts, the real estate would as clearly be exhausted as if sold in the usual way, reserving by the transaction an equity of redemption. If incumbered for but a fraction of its value, it is for the same reason partly exhausted, and the remainder, the equity of redemption, remains to be sold, if needed, and the court should so order. To our minds, there are no considerations leading to a conclusion that claims against the estate are liens superior to such a mortgage.

V. Thus far we have considered the intent of the testator in making the provisions under consideration, and from an abstract point of view determined the right of testators so to do. We must now look at the legality of these particular provisions of the will in connection with the facts of the case. Administration was granted in the estate of Michael Holderbaum about November, 1879. The incumbrances upon the real estate not filed were

5. ——: ——:
assent of
creditors.

from thirteen thousand dollars to fifteen thousand dollars, and the unsecured claims filed and established from ten thousand dollars to twelve thousand, dollars. The mortgage in suit was executed on the first day of January, 1886; the debt secured by it to mature on the first day of January, 1891, unless default should be made in the payment of interest, etc., in which event, at the election of the payee, it might become due in ten days after the default. This suit was commenced in August, 1889, because of a default in such payment. Annually after the appointment of the executor he filed his report, as to which no objections were made, till the seventh report was filed and styled as his final report. These reports show that the executor was acting under the provisions of the will as to making loans on the real estate, and using the money for the payment of debts; each report showing the balance due the estate or the executor, as the fact might be. The reports indicated the obtaining of loans by the executor under the provisions of will, the payment of such loans, and the annual interest thereon. This method of procedure was known to the court, and fully open to the knowledge of all parties interested.

In this connection it will be well to consider a point that will bear upon many of the questions presented, and will render unnecessary a particular reference to many of them. The point is whether or not the manner prescribed by the testator for the settlement of the estate was prejudicial to creditors. At the outset, it may be well to observe that the mere fact that such a manner proved, in the end, prejudicial, could not operate to defeat a mortgage given before such facts were known, and this observation has direct reference to very many of the reasons presented in argument why this mortgage should be held void. We are not disposed to establish an invariable rule to govern in determining this question of prejudice, but merely to

determine the law as applied to the facts of this case. The testator prescribed how he desired his executor to act as to his real estate. This we have determined he had a right to do, if without prejudice to his creditors. Nothing upon the face of the will indicates that prejudice would result. When the will was probated, and the executor entered upon the discharge of his duties, the will, in so far as it directed his course, was to guide him; for which purpose the will or an authenticated copy was to be placed in his hands. Code, sec. 2344. Of this situation all parties in interest must take notice. For the observance of his duties in this as in other respects he executes a bond, unless exempted, as in this case, and subscribes an oath. With this situation, we think it was the duty of the executor to proceed to execute the will, unless otherwise directed. His sole authority for acting otherwise than as directed by the will was the court. A party desiring the action of the court should invoke it. This right the creditors and devisees had, and for seven years silently, at least, assented to this course of procedure. If at the outset, or thereafter, they believed the course prescribed was or would be to their prejudice, the plainest rules of equity and justice required that they should attempt to arrest the course of procedure by an objection or an application to the court. The executor has not and does not complain. He, by his answer, expressly assents to the judgment sought.

VI. It is urged that the note only imports the personal obligation of A. C. Holderbaum, because the promise to pay is not made by him as executor, but the pronoun "I" is used, and the signature is "A. C. Holderbaum, Executor," etc. The mortgage, however, is not open to the same objection, and is a pledge of the property by Holderbaum as executor, and the money was obtained and used without question by the executor, for the

6. ——: ——: note of executor: form: mortgage.

estate. To the extent of enforcing the lien, the mortgage will control, even though the obligation on the note alone might in law be held to be that of A. C. Holderbaum. We may add that, conceding A. C. Holderbaum would be liable individually on the note, it does not follow, as a matter of course, that the estate is not liable; and hence the authorities cited, showing personal liability of trustees, etc., do not apply, for no individual liability is sought in this case. Such references as *Roger Williams National Bank v. Groton Manufacturing Campany*, 17 Atl. Rep. (R. I.) 170, and *Taylor v. Davis*, 110 U. S. 330, 4 Sup. Ct. Rep. 147, are not authorities against the liability of the estate in this case.

VII. In 1880, the executor, under the terms of the will, made on the land now in question a mortgage to one Bardeen, for two thousand dollars. The loan for which the mortgage in suit was given was used in part to pay off the Bardeen mortgage, and it is claimed that this land having been once mortgaged by the executor, the right to mortgage it was exhausted, and for that reason the mortgage to the plaintiff is void. Nothing in the terms of the will giving the right to mortgage the lands indicates a restriction to a single mortgage on the same tract, but they seem to invest the executor with a large discretion, permitting him to stand in the "place and stead" of the testator in controlling the real and personal property to realize the largest and best income therefrom to pay the debts on the real property.

VIII. In 1889, the creditors of the estate applied to the court for an order to sell the real estate, including that in question, and an order was made to that effect. There is, at least, some doubt whether the court did not intend that the sale should be subject to the lien of this mortgage; but, if not, it is sufficient to say that the

plaintiff was not a party to the proceeding, and its interest could not be divested nor affected by such an order entered in its absence.

IX. The three thousand dollars realized by the loan from the plaintiff were used by the executor as follows: Two thousand, one hundred and twelve dollars and eight cents to pay off the Bardeen mortgage, and the remainder, eight hundred and eighty-seven dollars and ninety-two cents, was applied in part payment of a claim allowed in favor of one Swihart, which was an unsecured claim. It is urged that the application in part of the proceeds of the loan for the payment of the general debts of the estate is not authorized, and renders the mortgage void. The validity of the mortgage must depend upon the facts as they existed when the loan was made, and not on the conduct of the executor in the application of the money. The executor was the person authorized by the law to receive and apply it. After the money was in the hands of the executor, the transaction as to the plaintiff was complete, and, if prejudice resulted to the creditors by a misapplication of the money, the redress is the same as if the money had been realized from a sale of the land in the usual way, and had then been misapplied. The facts that the executor was insolvent, and appointed without bond, as is true in this case, and prejudice resulted to the creditors or devisees, would not defeat the sale, and for the same reasons they would not defeat such a mortgage. The plaintiff was only required to know that the executor had authority to make the loan. It had no authority, nor was it its duty, to direct the application of the money. See 2 Williams, Executors, p. 1001; *Field v. Schieffelin*, 7 Johns. Ch. 150; *Webb v. Chisolm*, 24 S. C. 487.

This consideration disposes of a question extensively argued, that the payment of the mortgage claims by the executor was without the approbation of the

court. With proper restrictions, because of the difference as to the facts, we may profitably, quote from *Urban v. Hopkins*, 17 Iowa, 105, where land was sold by direction in a will: "Whether the executor, therefore, made a proper showing of the debts of the estate, whether the demands of creditors required the disposition of the property, or whether the executor acted in good or bad faith in his management of the affairs committed to his hands (no complicity being pretended so far as relates to defendants), is a matter of no kind of importance." The language in *Deery v. Hamilton*, 41 Iowa, 16, is quite significant, even where an unauthorized loan was made: "The estate has received the benefit of the money advanced by the defendant. It ought in good conscience to repay it with legal interest, * * * on the ground that the estate has had the benefit of the money received from defendant."

X. It is urged that the making of the mortgage by an executor without an order of the court is void. To our minds, the admitting of the will to probate, whereby it became, with the knowledge of all parties, an authority prescribing what should be done in certain particulars, is the only authority necessary, where all conditions precedent exist at the time of the sale, as is true in this case. The will, in terms, recognized the existence of the debts for the payment of which the incumbrance was authorized. There seemed to be nothing for the court to determine as precedent to the authority of the executor to act in this particular. It is, however, said: "Until the debts are paid, the estate is in the custody of the law, and no part of it can be disposed of by the executor, whether personalty or realty, without an order of the court;" referring to Code, sections 2386, 2387. These are the provisions by which the court may order the sale of real and personal property, when

necessary for the payment of debts.  They in no way
conflict with the authority of a testator to prescribe
that the property of the estate may be sold with or
without such a necessity.  The section of the Code
giving to a testator the right to prescribe the manner
"in which his affairs shall be conducted" is to be con-
strued with the other sections, and effect given to all.

XI.  The district court, as we have said in the
statement of facts, sustained the validity of the mort-
gage to the extent that the proceeds of the
loan were applied to the discharge of the
Bardeen mortgage on the land, which was
two thousand, one hundred and twelve
dollars and eight cents, with the accumulated interest
thereon, making two thousand, five hundred and sixty
seven dollars and sixty six cents, and for certain taxes
paid and attorneys' fees.  As to the remainder of the
mortgage debt, aggregating, with interest, eight hun-
dred and eighty-seven dollars and ninety-two cents, the
district court refused a foreclosure judgment, but
allowed it as a claim against the estate of the fourth class.
From this part of the judgment the plaintiff appealed,
contending that it should have a foreclosure judgment
for the entire amount.  The district court in its decree
assigns, as a reason for excluding the latter amount,
that it was used "to pay and discharge a debt then ex-
isting against said estate in favor of J. W. Swihart."
The Swihart claim was not an incumbrance on the
land, within the meaning of the will, and, conceding
that its payment from the proceeds of the mortgage
was a diversion of the fund from the purpose expressed
in the will, it would not justify the decree in this par-
ticular.  The diversion was after the loan was made,
and there were debts against the land, within the mean-
ing of the will, to which the excess could have been ap-
plied.  The fact that it was not so applied would not
affect the rights of the mortgagee.  The diversion was

11. —:—:
mortgage:
diversion of
fund by exe-
cutor.

without its fault.   This point has, in effect, been before considered.   There should have been a decree for the plaintiff.

There are numerous questions we have not discussed.   We have attempted to select such as would bring within the discussion the pivotal and more important questions in the case.   Questions pertaining to the estate have before been in this court, incidently involving some of the questions now before us, and the main question in this case has been decided by the federal court in this state.   See *Schlarb v. Holderbaum*, 80 Iowa, 394, *Ames v. Same*, 34 Fed. Rep. 224.   Our conclusions are in harmony with the reasoning in those cases.   These views lead to the following results: On the plaintiff's appeal the case is REVERSED; on the defendants' appeal it is AFFIRMED.