VALLEY NATIONAL BANK v. W. B. CROSBY et al., Defend-
ants, CHAS. H. MARTIN, Administrator, and J. T.
TIERNEY as Guardian of Minor Heirs,
Appellants.

**Executors and Administrators:** POWERS TO BIND ESTATE.  An admin-
istrator cannot bind his estate by contract, except pursuant to
statutory authority.

SAME.  Even if the authority of an administrator over real estate
conferred by Code 1873, sections 2402, 2403, 2404, authorizes borrow-
ing money for its benefit, that can be done only on due notice of
those interested in the estate.

RULE APPLIED.  Under Code 1873, section 2402, authorizing an
administrator, the heirs being absent or incompetent, to take
possession of realty, and receive rents, and do all other acts
relating thereto, which may benefit the heirs, he cannot bind the
estate for money borrowed for repairs, but not needed nor used
by the estate, on order of the court, without notice to the heirs;
and such action is not validated by an *ex parte* order of the court,
authorizing him to execute notes therefor in his capacity as
administrator.

GRANGER, J., dissenting.

*Appeal from Polk District Court.*—HON. C. P. HOLMES,
Judge.

FRIDAY, MAY 26, 1899.

PROCEEDINGS in probate to establish a claim against the
estate of Thomas Roche, deceased.  The district court made
a finding of facts, from which it appears that W. B. Crosby
was appointed administrator of the estate of Thomas Roche,
deceased, December 7, 1891, and qualified, but gave no notice
of his appointment.  The heirs of the deceased were minors,
living in Texas, and the administrator took possession of
the real estate, collected rents, and cared for it.  On the day
of his appointment he applied to a judge for an order to
borrow money with which to pay certain interest and taxes.

No notice was given, and an order was entered as prayed, authorizing him "to execute to the party or parties loaning said money his note, signed by him as administrator of said estate, and to bind the estate for the payment of the same until such time as he shall have in his hands sufficient moneys from the rents and profits of said estate to liquidate said note, interest and commissions, if any." He thereupon borrowed six hundred dollars from the Valley National Bank, and executed his note therefor in accordance with the order. At that time he had in his hands seven hundred and fifty dollars and fifty cents belonging to the estate, out of which, with the rents collected, he might have paid the interest and taxes for which money was borrowed. Rents were collected, and charges against the property met therefrom. April 7, 1892, on a showing that the buildings had been injured by a storm, another order was entered, permitting the administrator to borrow money with which to make repairs, and he again did so from the same claimant, executing a note for one thousand dollars as before. He then had on hand one hundred and seventy-eight dollars and thirty-five cents, exclusive of the first loan. The rentals were over three hundred dollars per month, and there was no occasion for borrowing. In April, 1892, he paid out three hundred and sixty-one dollars and seventy-nine cents, and received one hundred and fifteen dollars, leaving a balance of sixty-eight dollars and forty-four cents in his favor, —the first and only time during his administration. This was replaced the following month from rents collected, and from then on to his resignation, in March, 1895, there was always a large balance, exclusive of borrowed money, in his hands. These notes were renewed from time to time until February 3, 1894, when four hundred dollars was paid, and that in suit for one thousand eight hundred dollars given in pursuance of another order of one of the judges of Polk county, but whether upon any application does not appear. At that time there was in Crosby's hands a balance of two

thousand four hundred and seventy-nine dollars and ninety-four cents, exclusive of borrowed money and any compensation due him.   He made no report prior to August 17, 1894, and on his report, after allowing him compensation, he appeared to be indebted to the estate, not including the money borrowed, one thousand eight hundred and seventy-one dollars and twenty-four cents, which amount remains unpaid.   All moneys received by him were kept in a common fund deposited in bank to his individual credit.   Upon his resignation, Charles H. Martin was appointed administrator, and J. F. Tierney is guardian of the heirs who are minors.   The district court found the note a valid claim against the estate, and allowed it.   The administrator and guardian appeal.—*Reversed.*

*Bailey & Ballreich* for appellants.

*Ayres, Woodin & Ayres, E. C. Cory,* and *W. B. Crosby* for appellees.

LADD, J.—That an administrator, in the absence of statutory authority, may not bind the estate by executing a promissory note, is well settled.  *Winter v. Hite,* 3 Iowa, 142; *Dunne v. Deery,* 40 Iowa, 252; *Deery v. Hamilton,* 41 Iowa, 17.   Nor can an action be maintained thereon against the estate.   *Winter v. Hite, supra; Rich v. Sowles,* 64 Vt. 408, 15 Lawy. Rep. Ann. 850, and note (s. c. 23 Atl. Rep. 723); *Schlicker v. Hemenway* 110 Cal. 579, 52 Am. St. Rep. 134, and note (s. c. 42 Pac. Rep. 1063); 11 Am. & Eng. Enc. Law, 932.   Even when, in performing the duties of administration, expenses are necessarily incurred for services or purchases made, the parties with whom the administrator deals must look to him personally for compensation, and no action therefor can be maintained against the estate, though the claim be valid.   All such allowances are made to the administrator, not as fixed by his agreements, but based on quantum meruit

alone. *Johnson v. Lehman,* 131 Ill. 609 (23 N. E. Rep.
435, s. c. 19 Am. St. Rep. 63, and note); *Bott v. Barr,* 95
Ind. 243; *Baker v. Moor,* 63 Me. 443; *Austin v. Munroe,*
47 N. Y. 360; *Harding v. Evans,* 3 Port. 221; *Steele v.
Steele,* 64 Ala. 438; *Hallock v. Smith,* 50 Conn. 127; *Price
v. McIvre,* 25 Tex. 769 (78 Am. Dec. 558). In the last
case, however, it was suggested an action might be
maintained against the estate on a claim allowed by the executor, but not otherwise. The apparent exceptions do not
impinge these general rules. Recovery has been allowed
from the estate for money or the proceeds of property appropriated by the executor, and used for its benefit and enhancement. *Simpson v. Snyder,* 54 Iowa, 577; *Dunne v. Deery,*
40 Iowa, 252; *Deery v. Hamilton,* 41 Iowa, 17. But this
was not because of any contract, but on the ground that the
estate had received the benefit, and should repay. Or, as
stated in *De Valengin v. Duffy,* 14 Pet. 282: "Whatever
property or money is lawfully recovered or received by the
executor or administrator after the death of his testator or
intestate in virtue of his representative character, he holds
as assets of the estate, **and he** is liable therefor, in such representative character, to pay the party who has a good title
thereto." Again, third parties have been permitted to maintain equitable actions on contracts of the administrator
directly against the estate, where, because of his insolvency,
or some other sufficient reason, their remedy against him is
inadequate. But this is always based on a quantum meruit
or benefit received. *Clopton v. Gholson,* 53 Miss. 466;
*Mosely v. Norman,* 74 Ala. 422; *Dickinson v. Conniff,* 65
Ala. 581; *Norton v. Phelps,* 54 Miss. 467; *Hewitt v. Phelps,*
105 U. S. 393; *Willis v. Sharp,* 113 N. Y. 586 (21 N. E.
Rep. 705). In all these actions, the recovery is based on
a quantum meruit for something received by the estate, and
the liability does not extend beyond the value retained by it.

II.   The order of the judge on *ex parte* hearing, in the absence of any statute, added nothing to the powers of the administrator.  This appears from *Deery v. Hamilton, supra,* where the executor reported the borrowing of the money, and her report was approved by the court.

It was there said: "This action of the court, without the course prescribed by the statute having been followed by the executrix, did not validate the transaction done without authority.  As the law did not authorize the transaction, and prescribe that manner of converting the property of the estate into money, the approval of the court does not defeat its provisions.  There is no statute authorizing an executor to borrow money, and, as security, convey the land of the estate.  The course to be pursued in selling land of an estate is prescribed by statute.  The whole transaction must be held invalid."  Surely, the court or judge may validate any act, after done, which might have been authorized to be performed on an *ex parte* hearing.  In *Winter v. Hite,* 3 Iowa, 144, Wright, J., speaking for the court, said: "With him [the administrator] it is not a mere question of fact whether he have authority, for there is no one to give it, but it is a question of law, and the law denies the authority."  The court may direct the exercise of an existing power in a proper case, but additional powers cannot be created by the mere fiat of the court or judge, at least in the absence of any notice to the parties directly concerned.

III.   The only property left by the deceased was real estate, and the necessity of selling it for the satisfaction of indebtedness did not exist.  The duty of the administrator pertained exclusively to the care of such realty, and for this purpose he derived his authority solely from three sections of the Code of 1873, which we set out:

"2402.  If there be no heir or devisee present and competent to take possession of the real estate left by such decedent, the executor may take possession of such real estate and demand and receive the rents and profits therefor, and do

all other acts relating thereto which may be for the benefit of the person entitled to such real estate.

"2403. Such executor or administrator, under the order and direction of the court, may apply the profits of such real estate to the payment of taxes and of debts and claims against the estate of the deceased in case the personal assets are insufficient.

"2404. Such executor or administrator shall account to such heirs or devisees for the rents, profits, or use of such real estate deducting therefrom the payments made under the preceding section, together with a reasonable compensation for his own services, to be fixed by the court."

But for these provisions, the administrator had no authority to interfere with the real estate or the rents and profits accruing. *Little v. Sinnett,* 7 Iowa, 324; *Gray v. Myers,* 45 Iowa, 158; *Hodgin v. Toler,* 70 Iowa, 21; *Kinsell v. Billings,* 35 Iowa, 154; *Foteaux v. Lepage,* 6 Iowa, 123; *Lepage v. McNamara,* 5 Iowa, 124; *Beezley v. Burgett,* 15 Iowa, 192. We are not agreed as to whether these sections enlarge the powers of the administrator so as to authorize him to borrow money from which to make needed repairs, or simply require him, on the contingencies named, to exercise existing power on a class of property with which he formerly had no concern. But a majority does agree that if he may borrow money for such purpose it can only be done on due notice to those entitled to the estate. He is authorized to "do all other acts relating thereto which may be for the benefit of the person entitled to such real estate." It may readily be conceded that, had the estate derived any benefit from these loans, it might be required to reimburse the plaintiff to the extent of such benefit. But it does not appear that any of the money was so used. There was not the slightest necessity for borrowing, and investigation would have assured the bank of the folly of making loans save on the administrator's personal obligation. As we have seen,

ordinarily, no recovery can be had except for value received and retained by the estate, and these statutes seem to have been worded in harmony with that rule. It is said, however, that because of the order the estate should be held to the payment of this note. These orders, with the notes, if binding, amounted to pledging or mortgaging the realty and the rents and profits to the loaner as security for the payment of the money borrowed. A mortgage might not have been given to raise a fund for the payment of the debts of the deceased. *Trust Co. v. Holderbaum,* 86 Iowa, 1, 11 Am. & Eng. Enc. Law (2d ed.) 1059. If authority existed, it was because of the provision of the statute quoted. But we have held notice of application for the sale of land essential to the validity of the proceedings. *Boyles v. Boyles,* 37 Iowa, 592; *Good v. Norley,* 28 Iowa, 188; Code, section 3324. The evident reason for this is that property, the title of which is in the heirs or devisees, may not be taken from them without opportunity of being heard. The statute does not disturb the title, but simply authorizes the personal representative of the deceased, as trustee, to care for it, in the interest of the owner. Can the heirs be devested of that title, or of their inheritance, by incumbering the realty or rents and profits without the opportunity of being heard? It is a wholesome doctrine, subject to few exceptions, which requires that those whose rights are to be affected must have notice, actual or constructive, of the pendency of proceedings against them or their property. No man's property should be taken from him without reasonable means being afforded to assert and protect his rights; otherwise the law might well be stigmatized as an instrument of injustice and oppression. *Hopkins v. McCann,* 19 Ill. 113; *Long v. Thompson,* 60 Ill. 27. As the inevitable effect of the orders was the pledging of the property of the heirs as security, and thereby depriving them of their interest therein to that extent, they were entitled to notice of the hearing of the

application made for that purpose. The orders, having been entered on *ex parte* hearing, to which no one except the administrator was a party, were void. The claim ought not to have been allowed.—*Reversed.*

GRANGER, J., dissenting.