JOHN S. WOOD v. LUCINDA C. TRUAX, CHARLES R. TRUAX
AND IRENE T. HIBBARD.

*Infants not personally liable for deficiency on foreclosure of
mortgage made by guardian—Equity practice—Supplemental
bill—Amendments—Costs.*

An infant cannot be personally liable on a bond made by another
as guardian.

Complainant in foreclosure is a stranger to any agreement binding
an infant defendant to the other defendants, or to any settle-
ment of accounts between them, and cannot sue upon such an
agreement or settlement in order to obtain a personal decree
against the infant for a deficiency.

It is irregular practice for a guardian *ad litem* of an infant defend-
ant in foreclosure to join in an answer with other defendants.

Facts of which complainant has learned since filing his bill, but
which occurred before, are not matter for a supplemental bill
but for an amendment.

The guardian or attorney of an infant defendant in foreclosure has
no implied power to stipulate for the introduction of evidence of
facts occurring since the filing of the bill.

A stipulation in a foreclosure proceeding for the introduction of
evidence of facts that have occurred since the filing of the bill,
is inoperative if it does not state what kind of facts are to be
given in evidence.

An infant's guardian cannot bind the ward for a loan, nor make him
liable jointly with any one else who is to have part of the
money borrowed.

A minor ward's estate cannot be made security for debts contracted
by the guardian, if the money was not advanced to the minor's
account; and the creditor would have to see to the apportion-
ment of the loan before he could look to the minor's estate for
any part of his advances.

Courts of equity cannot create contracts any more than courts of
law.

A decree of foreclosure against an infant's land on a mortgage made
to her guardian, expressly reserved the equity concerning her
personal liability for future disposal, and the infant did not
appeal.    *Held* that the reservation left the last decree as a
final decree on that equity and involved the whole record, and
that on prevailing on an appeal from the final decree the infant
was entitled to all costs and not merely to those accruing after
the sale on the foreclosure decree.

Appeal from the Superior Court of Detroit. Submitted October 30. Decided November 1.

FORECLOSURE. Defendant Irene T. Hibbard appeals.

*Herbert L. Baker* for complainant. The retention by an infant ward, after majority, of the benefit of the guardian's act in borrowing money on the security of the ward's estate is a ratification of the transaction, (*Young v. McKee,* 13 Mich., 553; *Corey v. Burton,* 32 Mich., 30), and estops the ward from repudiating it, Bigelow on Estoppel, 511; *Deford v. Mercer,* 24 Ia., 118; 2 Smith's Lead. Cas. (5th Amer. ed.) 662; such equitable estoppels apply to infants, *Com. v. Shuman's adm'r,* 18 Penn. St., 343.

*Walker & Kent* for appellant. A minor ward's promise to pay a mortgage is not binding unless expressly ratified after majority, *Smith v. Kelley,* 13 Met., 309; *Minock v. Shortridge,* 21 Mich., 304; *Baker v. Kennett,* 54 Mo., 82; and if made after the filing of the bill of foreclosure it constitutes a new and distinct ground of liability and cannot be introduced by a supplemental bill, Adams' Equity, 413; Story's Eq. Pl., § 339.

CAMPBELL, C. J. Wood filed his bill to foreclose a mortgage made by Lucinda C. Truax as guardian of the other defendants, setting forth also a bond made for the same purpose. Having exhausted the land, he procured a decree for the deficiency against all of the defendants personally. Defendant Irene Hibbard appeals from this personal decree.

There is nothing in the bill to maintain such a decree. There is neither statute nor common law which can sustain the personal liability of an infant on a bond made by her guardian. The illegality of the mortgage in this case having been declared as to her original interest the defendant has not appealed from the decree of foreclosure which reserved the other equities. But inas-

much as the bond described in the bill is void upon its face,—not being an infant's possibly voidable contract but one beyond a guardian's authority, it would require a distinct promise on a sufficient consideration, in the shape of a new contract, to bind Mrs. Hibbard, and no such contract is averred in the bill.   We do not think there is any evidence of such a contract written or verbal on which complainant could recover, even if the bill had set forth the matters relied on in the testimony.   If there was any understanding, complainant was a stranger to it and could not sue upon it, whether binding her to the other defendants or not.   There has been no conveyance to her of any part of the mortgaged property made in such a form as to bring her within any of the decisions which give a mortgagee recourse to purchasers from the mortgagor.

Without, therefore, attempting to discuss the questions of fact concerning the mutual equities of defendants, we think the personal decree unwarranted.

The decree must be reversed, as to Mrs. Hibbard, with costs of both courts.

The other Justices concurred.

Motion for rehearing.   Submitted November 19.   Decided November 21.

*Herbert L. Baker* for the motion.

*Charles A. Kent* against.

CAMPBELL, C. J.   This court having at the last adjourned day announced an opinion and directed the entry of an order reversing the decree rendered against Irene T. Hibbard, a motion is now made for a rehearing on the ground of misapprehension of facts.

The appeal being from a personal decree in which it was sought to charge Mrs. Hibbard for money alleged to have been advanced on her account and from which she is claimed to have received a personal advan-

tage, the other matters involved in the suit were not important to be considered, and some errors appear in their statement. The form of the securities being somewhat ambiguous, and the complainant having testified to dealings with Mrs. Truax as guardian of both the other defendants, it was incorrectly assumed that the mortgage was thus executed, when in fact Charles was of age. But no misapprehension existed concerning any of the facts relating to the supposed liability of Mrs. Hibbard to respond personally to complainant,—which was the only matter before us, and the only one on which it was necessary to go through the record.

We did not consider it worth while to discuss at length the reasons for arriving at our conclusions, for we regarded the rules as elementary, and no authority was cited which in our opinion gave color to any other holding on such a case as was before us. We do not propose now in making a final disposition of the case to do any more than point out why the supposed difficulties which counsel have inferred from what they assume to have been misconstrued in the record, do not exist.

The original bill was an ordinary foreclosure bill which in its framework treated all these defendants as *sui juris* at the time of filing, and prayed relief against all alike personally. By an irregular practice the guardian *ad litem* joined with the other defendants in an answer and made some admissions, not now complained of, but which as a guardian he had no lawful authority to do, but denying the legal existence of the mortgage as against the minor.

In November, 1876, a document called a supplemental bill was filed devoted entirely to the averment of certain transactions in partition by reason of which it was claimed Mrs. Hibbard had bound herself equitably to pay the debt due to complainant and also averring some recognitions by her.

It not only did not appear (as it was not true in

fact) that she had become of age, but nothing whatever was set up as having occurred since the filing of the original bill, although it was averred complainant' had received his information since it was filed. This was not supplemental matter and should have been put in as an amendment. But inasmuch as Mrs. Hibbard was still a minor, the entire case was immaterial in any point of view and this pleading was a practical nullity. The answer of the guardian *ad litem* to it could not have bound her in any way, and may also be disregarded.

On the 31st of December, 1877, a stipulation was filed which, so far as the record shows, was unauthorized by Mrs. Hibbard, who had just come of age, which permitted facts occurring since the filing of the original and so-called supplemental bills, to be introduced in evidence as if a new supplemental bill had been filed. This stipulation is also inoperative,—not only as apparently attempting to bind without authority an infant just come to maturity concerning transactions during minority, whereon neither guardians nor attorneys can have any implied power,—but also because it does not even indicate what kind of facts are to be given in evidence as grounds of recovery. As already mentioned, the so-called supplemental bill set up no facts as having occurred during the suit, and even if a stipulation might authorize pleadings to be changed *nunc pro tunc*, yet in this case we are not informed what facts it was intended to set up. It is fatally ambiguous, and could not justify any decree based upon it.

But the facts actually given in evidence and claimed to have been under stipulation are not in our opinion sufficient to authorize any relief on any allegations and therefore would give no reason for allowing amendments or other changes, however seasonably applied for.

Upon the most favorable view which we are able to take of them, no more is proved than this:

The original loan was made to two persons of full

age in their own right, and to one of the two in her character as guardian, and the securities were given in the same way. It is not claimed that this created in itself an obligation binding on the ward which was valid in law. It was unquestionably void. It cannot be claimed that either equitably or in any other way a guardian, even if she had authority to bind the ward by a loan, which she certainly had not, could make the ward liable jointly with any one else who was to have a part of the money borrowed. By these transactions Charles Truax and Lucinda Truax in their individual capacities were principal debtors and debtors on their own account. A creditor who under the fullest legal authority had advanced money on any such securities would be bound to see to the apportionment of the money if he could look to the minor's estate for any portion of his advances. It certainly could not be made security for the debts of others for the money not advanced to the minor's account.

As a matter of fact the testimony shows that $3000 of this money went to Charles Truax, and the balance went to Mrs. Truax—not for the ward, but for the general purposes of the estate of her deceased husband and for family expenses. The amount, therefore, which could in any way be said to have gone for the benefit of Mrs. Hibbard was very small and cannot be identified, and none of it was so applied directly as to be properly called a direct payment to or for the minor.

We find no evidence whatever of any action by Mrs. Hibbard since she reached majority to assume or recognize any portion of this as a personal claim.

There is evidence that in making partition of her father's estate, Mrs. Hibbard received two thousand dollars more than her brother, and that this difference was made up by his having had money enough previously to balance it. This was done by proceedings in partition while she was a minor, and was the result of a general accounting into which this money probably

entered with other moneys used by Charles. Such an accounting could only be properly had on the basis that the money embraced in it had belonged to the estate of George B. Truax which was partitioned, and not to the children. But there is no pretense that it was ever borrowed for that estate, and the whole accounting was made in such a way as to make it impossible to say that out of the general balance against Charles this particular claim was the one that fixed the amount. This money never formed any fund that was kept separate for such a purpose.

The equity, plainly stated, is simply this—that because Mrs. Hibbard is said to have received more out of her father's estate than her brother did, she is personally liable to her brother's and her mother's creditor for money lent to them, which in their subsequent dealings they settled as if it had come from the father's estate. Even this could not be made certain without a settlement of Mrs. Truax's accounts, which by general consent have been left at large.

We do not know any principle whereby a third person can claim to intervene to set up an interest in such settlements. Even if Mrs. Hibbard had promised to pay her brother's or her mother's debts (which is not in our opinion made out in any form legal or not legal), complainant was in no way shown or alleged to have been made a party to such an understanding.

This proceeding is nothing more or less than an attempt to enforce a personal liability without any contract to base it on. Equity cannot create contracts any more than other courts.

Our impression was that inasmuch as Mrs. Hibbard did not appeal from the first decree which provided for the sale of her land, although not the undivided interest which she originally owned, she was not entitled to costs prior to the sale. But inasmuch as that decree expressly reserved the equity concerning her personal liability for future disposal, that reservation left the last decree as

an original decree on that equity, and therefore the whole record was involved in it, and she is entitled to all her costs.

The motion for rehearing is denied, and the decree, which has not yet been completed in this court, will be entered accordingly.

The other Justices concurred.