THE VAN BUREN DIVISION OF THE TOLEDO & SOUTH HAVEN
RAILROAD COMPANY FOR THE USE OF RUFUS
TILLOR, WILLIAM W. VANDERVEER ET AL.
v. TRUMAN LAMPHEAR AND LOREN
LAMPHEAR.

*Contracts—Alteration in parties.*

1. A railroad aid note was given whereby the makers, in consideration of the building of the Van Buren Division of the T. & S. H. Railroad, promised to pay to said railroad company, or order, $200 in thirty days after notice of its completion. When the note was given, the T. & S. H. Company was not in existence, and no company of that name was ever organized, but an independent corporation by the name of the Van Buren Division of the T. & S. H. Railroad Co. was afterward created, with a different purpose from that of the original undertaking. *Held*, that the promisee in the note was the T. & S. H. Railroad Co.; and that the Van Buren Division, as afterward organized, could not recover upon it without showing that the promisors had consented to the change of scheme, and declaring on the new agreement.

2. Parties to a contract are not liable after it has been altered, unless they have consented to the new subject matter in the same sense.

3. A contract cannot exist without competent parties to make it

Error to Van Buren.    (Mills, J.)    June 24.—Sept. 23.

ASSUMPSIT.    Defendants bring error.    Reversed.

*Edward Bacon* for appellants.

*O. W. Rowland* and *Spafford Tryon* for appellee.

CHAMPLIN, J.    The facts and circumstances antecedent to the date of the instrument declared on may be summarized as follows: In the winter of 1875–76 meetings had been held at Lawrence, in Van Buren county, at which a project was canvassed to obtain aid in the construction of a railroad from Toledo to South Haven, passing through Lawton, Paw Paw and Lawrence, to be called the Toledo & South Haven Railroad.    At these

meetings representations were made of the benefits to be derived from a connection with Toledo and the markets of that city and the benefits which would accrue to those residing in the vicinity of Lawrence by having a competing market with Detroit. The projectors of the road required that aid by way of donations should be given by residents in the vicinity of Lawrence to the amount of twenty thousand dollars, which it was represented should be expended in the construction of a division of the road between Lawrence and Paw Paw. Several persons living in and near Lawrence interested themselves in obtaining what they called " aid notes " to this enterprise, among whom was Edward H. Phelps, who called upon the defendants to give four hundred dollars. He talked with them about a railroad from Toledo to South Haven, and told them that prospectors had been over the route; that there would be a company organized to extend the road to Toledo some time; that they were talking about organizing a company south of Lawton. He testifies that he had given his own note to the Toledo & South Haven Railroad Company; that he represented to them that the aid he was soliciting from them would all be used between Lawrence and Paw Paw. The defendants refused to give aid to the amount of four hundred, but were willing to do so to the extent of two hundred dollars, and thereupon he drew up and they signed the following agreement, namely:

" $200. For and in consideration of the convenience of and benefit to be derived from the building of the Van Buren Division of the Toledo & South Haven Railroad through the village of Lawrence, Van Buren county, Michigan, I hereby promise to pay to said railroad company or order two hundred dollars, thirty days after notice of the completion of said railroad to and the establishing a depot at a point within one-half mile of the public square in said village of Lawrence, and connecting said point with some railroad now in running operation.                                T. LAMPHEAR.
                                               L. E. LAMPHEAR.
*Dated at Lawrence, February* 29, 1876."

—which they delivered to Mr. Phelps. At this time there was no such corporation organized as the Toledo & South

Haven Railroad Company, and never has been since. Neither was there at that time any such corporation as the Van Buren Division of the Toledo & South Haven Railroad Company. The record shows that the articles of association of the plaintiff were not perfected by the making of the required affidavit until the 29th day of March, 1876, and were filed in the office of the Secretary of State on the 21st day of April, 1876. This corporation was organized to build a narrow-gauge road. The route of the road described in these articles commences at a point in the corporate village of Lawton, and thence runs in a north-westerly direction by the way of the villages of Paw Paw and Lawrence to a point on Black river in the village of Bangor in the county of Van Buren.

The declaration avers that the contract above set out was made with the plaintiff; and its right to recover depends upon the correctness of this averment. One of the essential elements of a legal contract is that there shall be parties capable of entering into it. The first question to be considered in this case is this: To whom was the promise made? What railroad company is referred to in the writing signed by the defendants? The language is: "I hereby promise to pay said railroad company or order." It must refer either to the Toledo & South Haven Railroad Company, or to the Van Buren Division of the Toledo & South Haven Railroad Company. To a person entirely unacquainted with the facts and circumstances attending the making of the paper it would appear, from the face of the writing, that there was a Toledo & South Haven Railroad Company, and that it was contemplated to build a division of such company's railroad, called the Van Buren Division, and that the convenience and benefit to be derived from the building of this division of the company's road constituted the admitted consideration for the promise, which was to be fulfilled thirty days after notice of the completion of said division to and establishing a depot at a point within one-half mile of the public square in the village of Lawrence, and connecting said point with some railroad in running operation at the time the promise

was made. The promise, from a proper, obvious and ordinary construction of the language of the writing, was made to the Toledo & South Haven Railroad Company. The promisees, in order to avail themselves of aid promised, were to perform certain acts specified in the writing, namely, to complete the building of a division of its road, establish its depot and connect that point with some railroad then in operation. The facts and circumstances disclosed in the record do not alter the fair and legal import of the language used in the writing. They show that such a company was to be organized as the Toledo & South Haven Railroad Company, which should construct the road from the point named in the writing, and connect it with some road running to Toledo. Instead of organizing a Toledo & South Haven Railroad Company, a corporation was formed called the Van Buren Division of the Toledo & South Haven Railroad Company. How it could be a division of the Toledo & South Haven Railroad Company before such railroad company was formed, is difficult to perceive. The corporation, although called the Van Buren Division, is a complete and independent corporation, and has no connection with or relation to the unformed corporation called the Toledo & South Haven Railroad Company. It claims, moreover, that it is the payee or promisee named and intended in the writing declared upon in this case, and that having organized for the purpose of building the Van Buren Division of the Toledo & South Haven Railroad, and accepted the proposition therein made, and performed the conditions thereof, the contract became a binding obligation which it can enforce. I do not regard the writing signed by the defendants as an open offer or proposition to any person or corporation who would construct the Van Buren Division of the Toledo & South Haven Railroad through the village of Lawrence, but as a proposal directly to the Toledo & South Haven Railroad Company, which should thereafter be formed; and unless such a company should be thereafter formed, the promise could not be enforced for the want of a proper party to the contract.

This subject was fully discussed in *Underwood v. Waldron* 12 Mich. 73, and principles laid down which must dispose of this case. It was there said that "There must therefore be not only a party promising, but a party to enforce the promise. * * * Until the *persons designated* to receive the money assume their duties—or, where *none are designated*, until some person incurs expense or liability in fair reliance on the subscriptions—the offer of the subscribers may properly be regarded as liable to withdrawal. In such case the question is not properly whether there is any consideration for the agreement, but whether there is any agreement at all." In *Stevens v. Corbitt* 33 Mich. 458, the promise was made to one H. H. Smith, and was afterwards properly assigned to the plaintiff. In that case it was said that "Where such a promise is made to some one necessarily connected with, or interested in the work being done, for the benefit of the company about to, or which may have undertaken the work, then, upon completion of the same, or upon the performance of the conditions upon which the promise was made, the liability of the promisor becomes complete." In *Michigan Midland & Canada Railroad Co. v. Bacon* 33 Mich. 466, the promise was made to the Michigan Midland Railroad Company, its successors or assigns. The Michigan Midland Railroad Company assigned the contract to the plaintiff, who completed the road. Marston, J. said: "From a reading of his agreement it would appear to have been a matter of small importance to him what corporation built the road and opened it for traffic, if it was only built and opened. It was the building and opening which was considered the essence of the agreement." These remarks are equally pertinent to the case under consideration, so far as the building of the road is concerned. It was a matter of no moment to defendants what company should actually complete the road mentioned in their writing. The benefits would accrue to them equally as well whether it was built by one or the other company. This relates to the consideration for the promise, but it does not by any means follow that any company which should build the road could maintain an action on the con-

tract without showing that it was the party named in it, or derived its title through such party. *Tuttle v. Michigan Air Line R. R. Co.* 33 Mich. 247; *Swartwout v. Michigan Air Line R. R. Co.* 24 Mich. 389.

It was said in *Woods v. Ayres* 39 Mich. 350, that neither an express contract nor one by implication can come into existence unless the parties sustain contract relations, and the difference between the two forms consists in the mode of substantiation and not in the nature of the thing itself. To constitute either the one or the other the parties must occupy towards each other a contract status and there must be that connection, mutuality of intention, and interaction of parties, generally expressed though not very clearly, by the term "privity." The parties must be consenting bargainors, personally or by delegation, and their coming together in contract relation must be manifested by some intelligible conduct or sign. It is hardly necessary to say that without parties a contract cannot express any mutuality of will, or raise any contract relations. And that is precisely the difficulty here. The promise was made to the Toledo & South Haven Railroad Company, and there was no such party promisee in existence. And although the promise was made with the intention that such party would come into existence by proper organization for that purpose, and then be capable of passing upon the question of acceptance of the proposition, until that contingency should happen; the written proposition was of no force or effect as a legal obligation. Had the proposition been an open one, to any person or corporation who might thereafter build the Van Buren Division of the Toledo & South Haven Railroad, or had it been made to the corporation plaintiff by name, or had it been made to any person by designation for the benefit of the plaintiff, the case would have been different. In all such cases an acceptance by the party designated and performance makes a binding contract.

The contract declared on in this case being in writing, its legal construction was for the court. Its terms appear to us to be entirely unambiguous, and import a promise made to the Toledo & South Haven Railroad Company. The defend-

ant was entitled to have the jury instructed as requested in his fifth, seventh, and fourth requests, to the effect that the plaintiff could not recover unless it was at the commencement of this suit the same corporation to which their promise was made, and to whom they intended it should be delivered, and that such promise, by the writing, was made to the Toledo & South Haven Railroad Company, and the jury should have been instructed, as requested, that the plaintiff was not entitled to recover.

If there could be any doubt as to the correctness of the construction which we have given to the writing under consideration, it would be absolved by the construction placed upon the instrument by the parties immediately interested in its enforcement soon after it was given, and by their acts in relation thereto. The record shows that the plaintiff corporation was fully organized on the 21st of April, 1876 ; that Mr. E. H. Phelps, who solicited and obtained the "aid note" from defendants, was a stockholder and subscriber to its articles of incorporation, as were also Mr. Free, Mr. Ihling and Mr. Adams ; that as early as the 20th of March, 1876, the persons who were active in obtaining subscriptions to stock and aid notes, and among whom was Mr. Phelps, entered into a written pledge or agreement that, in case any of them should be elected director to represent the stock taken by the citizens of Lawrence in the Van Buren Division of the Toledo & South Haven Railroad, they would not use any part of said stock until the building of said road between Lawton and the Michigan Southern Railroad became an established fact, by getting sufficient subscriptions to grade and tie said road, and making arrangements with responsible parties to put the iron and rolling stock on that portion of said road. It also appears that nothing further was done than to organize the company and obtain subscriptions, and that they were awaiting some action to be taken between Lawton and the Michigan Southern Railroad ; that the people in that locality did nothing, and seemed inclined to abandon the project ; that in 1877 certain parties connected with the plaintiff corporation then proposed a new scheme, which was

to construct a railroad from Lawrence to Paw Paw and utilize the road then built from that point to Lawton by narrowing up the track, or putting down a third rail and thus obtain a railroad connection with the Michigan Central Railroad. Consequently they called a meeting of the stockholders and subscribers at Lawrence, and laid the scheme before them and asked their consent to the change. At this meeting Mr. Free, Mr. Ihling and Mr. Adams were present, and Mr. Free stated the object of the meeting, which was to build the line from Lawton to Lawrence, and he requested aid from the citizens of Lawrence to construct it to Paw Paw; and when asked why they did not use or rely upon the aid notes already given, he remarked that " this is a different project from what those were given for, and that they did not propose to buy any lawsuits." A vote was taken and the change agreed to, with but one dissenting voice. Dr. Haskins, a witness for plaintiff, testified that he attended this meeting, and that the proposition was to decide whether they would go on and build this division from Lawrence to Paw Paw before the others had completed their organization, or raise their subscription to build the other portion between Lawrence and Bangor, or further south. There can be no doubt that those subscribers who assented to this project, whether at that meeting or at any other time, would be bound by the new agreement, in which case it would be necessary to declare upon the new agreement. The parties must assent to the same subject-matter in the same sense. *Hazard v. New England Ins. Co.* 1 Sumn. 218; *Hartford & N. H. R. R. Co. v. Jackson* 24 Conn. 517. The defendants did not attend the meetings, and their evidence is that they never assented to the change, and there is no testimony tending to prove that they ever did assent thereto. Upon this point there was no conflict of testimony. The burden of proof was upon the plaintiff, and it failed to show that the defendants consented to the change of project.

The judgment is reversed with costs of both courts and a new trial granted.

The other Justices concurred.