NELSON v. SACKETT'S ESTATE.

GUARDIAN AND WARD—CONTRACT WITH GUARDIAN—WARD'S ESTATE
—INSANE PERSONS.

> The guardian of an insane person has no power or author-
> ity to bind the estate of his ward for attorney's services
> in procuring the ward's release from an insane asylum.[1]
> Lothrop v. Duffield, 134 Mich. 485 (96 N. W. 577).

Error to Barry; Clement Smith, J. Submitted Octo-
ber 24, 1916. (Docket No. 51.) Decided December
22, 1916.

Walter M. Nelson presented his claim for profes-
sional services against the estate of Walter Sackett
to the commissioners on claims. Upon the disallow-
ance of his claim he appealed to the circuit court.
Judgment for defendant on a directed verdict. Plain-
tiff brings error. Affirmed.

*Walter M. Nelson, in pro. per.*
*Colgrove & Potter, for appellee.*

BROOKE, J. The plaintiff in this case is a practicing
attorney in the city of Detroit. He filed a claim for
services in the sum of $150 in the probate court
against the defendant estate. The record discloses the
following facts: Some years before the time of the
rendition of the services for which compensation was
sought, Walter Sackett killed his wife. Being placed
upon trial for the commission of the crime, it was
legally determined that at the time said crime was
committed said Sackett was insane. He was there-

[1]Authorities passing on the question of right to recover against
incompetent person or his estate for legal services in attempting
to secure his freedom or in resisting lunacy proceedings are
collected in a note in 45 L. R. A. (N. S.) 67.

upon confined in the asylum for the criminally insane at Ionia, Mich. After his confinement his daughter, Lottie Cain, was duly appointed guardian of his person and estate. In the fall of 1914, Alta Cain, the daughter of Lottie Cain, interested the plaintiff in the predicament of her grandfather Sackett, and a correspondence ensued between plaintiff and Lottie Cain, in which Lottie Cain expressed the desire that steps should be taken to secure, if possible, the release of her father from the asylum. No bargain was made between Lottie Cain and the plaintiff as to the compensation he should receive for his services, but plaintiff nevertheless undertook to effect said release. His efforts were without result until the spring of 1915, when, it appearing to the asylum authorities that Sackett was in a moribund condition, and acting upon the suggestion of Circuit Judge Clement Smith, plaintiff was permitted to take Sackett from the asylum and deliver him into the custody of his daughter and guardian, Lottie Cain. He was released from custody on the 23d day of April, 1915, and died less than two weeks later on the 5th day of May. The record contains no evidence that from the time of his incarceration to the day of his death he had regained his normal mentality. Plaintiff does not claim ever to have seen Walter Sackett until the day of his release, and does not rely upon any contract made with him, and in one place in the record he disclaims employment by the guardian, Lottie Cain. In answer to a question by the court as to who he was working for he said:

"For Walter Sackett, as nearly as he was able to employ anybody. I was not Mrs. Cain's attorney, and never had been, neither officially nor personally. Mrs. Cain only got an indirect benefit out of this. She might have employed an attorney to act for her, but my idea is this, I am perfectly willing to submit the thing as it is. I simply rendered the services for this man. If he had been able to employ me, he would

have employed me. My files show we never agreed on any price or terms for this thing, and we never did come to any terms."

That the plaintiff was active in the matter, and that his activities resulted in the final release of Sackett from the asylum a few days before his death, there can be no doubt. For his expenses and disbursements in connection with the work, Lottie Cain paid him about $50. In her final account as guardian she likewise placed an item of $30, which she tendered the plaintiff for his services, and which he refused. The learned circuit judge who heard the case at the conclusion of plaintiff's testimony directed a verdict in favor of the defendant estate.

Assuming that the plaintiff had a contract with the guardian, Lottie Cain, for the performance of the services in question (although in the testimony above quoted he seems to deny that he had such a contract), can he recover the value of his services from the estate of the ward? He asserts that the recent case, *In re Freshour's Estate*, 174 Mich. 114 (140 N. W. 517, Am. & Eng. Ann. Cas. 1915A, 726), is authority for the allowance of his claim. The distinction between that case and the case at bar seems very plain. There, the services of the attorney were rendered under contract with Mrs. Freshour, who was at the time under no disability, whereas in the case at bar Sackett, so far as this record discloses, was insane to the moment of his death, and never attempted to make a contract with the plaintiff. The learned circuit judge held, and we believe properly, that this case is controlled by the decision in *Lothrop* v. *Duffield*, 134 Mich. 485 (96 N. W. 577). The relations between guardian and ward and the power of the guardian to bind the ward's estate were carefully considered in that case, where it was held:

"There was no privity of contract between these

infants and the defendant. Whatever contract relations he had were with their guardian, who could not bind the infants personally or their estate by contract (except by authority of the probate court in accordance with law), so as to subject their estates to claims filed by third parties for expenses incurred by the guardian. The practice has generally been for the guardian or executor to pay or incur such obligations, and include the amounts in his account against the estate" (citing cases).

An injunction was allowed enjoining enforcement of the claim against the estate of the ward, but without prejudice to any proceedings against the guardian of the said wards or the presentation by her to the probate court for an allowance of an account including said claims.

The judgment is affirmed, though without prejudice to a proceeding against Lottie Cain, if plaintiff is so advised.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. PERSON, J., did not sit.