## LANDWEHR *v.* HOLLAND CITY STATE BANK.

1. GUARDIAN AND WARD—CONTRACTS—CORPORATIONS—BOARD OF DIRECTORS—CONSIDERATION.

   Contract between wife and a bank, as coguardians of a mentally incompetent man in whose estate there were a large number of shares of stock of a corporation whose affairs were in such condition as to make it desirable for guardians to have representation both on the board of directors and executive committee, and two directors of the bank whereby directors were to serve as members of the corporation's board of directors in return for a quantity of stock *held,* not void as against public policy, in suit brought in behalf of the incompetent by next friend and remaining guardian and continued after the incompetent's death by his widow and executrix, since the purpose of procuring services of men of ability and business experience and nature of consideration provided by the contract were such as to bring benefits to the estate and the services as proxies were such that a consideration could be paid to directors as directors of coguardian bank.

2. APPEAL AND ERROR—WIDOW'S ELECTION NOT TO TAKE UNDER WILL—CANCELLATION OF INSTRUMENTS—GUARDIAN AND WARD.

   Effect of widow's possible election not to take under will of husband, made eight years before he was declared mentally incompetent, and under which she was constituted sole legatee *held,* immaterial in her suit as executrix to set aside contract she had made while acting as coguardian, where decree of trial court is affirmed on ground contract made was a valid one.

   POTTER, J., dissenting.

Appeal from Ottawa; Miles (Fred T.), J. Submitted January 19, 1938. (Docket No. 98, Calendar No. 39,758.) Decided May 4, 1938.

Bill by Edgar P. Landwehr, next friend of August H. Landwehr, incompetent, and Louise Landwehr, general guardian of August H. Landwehr, against Holland City State Bank of Holland, Charles Kirchen and Mary C. Donnelly, executrix of the estate of Bernard P. Donnelly, deceased, to have a contract declared invalid, to secure the surrender of certain stock or a money decree, for an injunction and other relief. Bill dismissed. Plaintiffs appeal. Suggestion of death of August H. Landwehr. Louise Landwehr, executrix of the estate of August H. Landwehr, substituted as party plaintiff. `Affirmed.

*Alexander, McCaslin & Cholette* (*Clare J. Hall,* of counsel), for plaintiff.

*Diekema, Cross & Ten Cate,* for defendant executrix.

*Elbern Parsons,* for defendant bank.

Wiest, C. J. August H. Landwehr was a prominent business man at Holland, Michigan, and held 78,923 shares of no par value stock of the Holland Furnace Company. He was adjudged mentally incompetent by the probate court of Ottawa county on September 15, 1932, and his wife Louise Landwehr and the Holland City State Bank were appointed guardians of his estate and qualified and acted as such.

The affairs of the Holland Furnace Company were in such condition, on account of the general business depression, that the guardians deemed it advisable to have representation in the management of the company affairs, both on the board of directors and the executive committee, and, to such end, entered into an agreement with Bernard P. Donnel-

ly and Charles Kirchen, who were directors of the Holland City State Bank and men of affairs and business experience, to give their attention to the management of the furnace company and become members of its board of directors. The guardians, having reached such an agreement with the two men, reduced the terms thereof to writing and petitioned the probate court for approval and authority so to employ Donnelly and Kirchen. The probate court granted the petition and Donnelly and Kirchen performed services. The agreement, approved by the probate court on November 18, 1932, engaged the services of Donnelly and Kirchen to protect the interests of the estate of the incompetent and, in order to qualify them for the position of directors and in payment of their services, they were each to receive 1,500 shares of the stock of the furnace company at that time, 1,000 shares three months after that date, and other shares at stipulated periods until 5,000 shares in all had been received, and—

"No payments in stock as herein provided, shall be made by party of the first part in the event of the death or withdrawal of either of said parties of the second part, their entire compensation in such event to consist of such stock as shall have been received by them prior to such death or withdrawal."

Mr. Donnelly received 1,500 shares of the stock and died December 23, 1932. Mr. Kirchen received 2,500 shares of the stock up to the time of his resignation on March 22, 1933.

After the death of Mr. Donnelly, Mrs. Landwehr requested Mr. Kirchen to resign as a director of the furnace company and he complied. She also requested the bank to resign as coguardian and, thereupon—

"On March 29, 1933, the final account of the bank and the first annual account of Louise Landwehr as guardians of said estate were filed in the probate court for Ottawa county. In the final account of the bank the following item appeared as a credit to it:

"'Office expense, special service compensation, 2,500 shares of stock delivered to Charles Kirchen, 1,500 shares of stock delivered to B. P. Donnelly as per court order dated November 18, 1932, $35,113.'

"An order for publication was made on March 29, 1933, and an order allowing said account, including said item, was made on May 2, 1933.

"Also included in said account and allowed by the court was the sum of $1,000 to the Holland City State Bank for its fees as guardian."

This suit was brought, in behalf of the incompetent by next friend and Louise Landwehr, guardian, to have the mentioned contract decreed a nullity and to recover from the Donnelly estate and Mr. Kirchen the shares of stock or the value thereof. In the circuit court the bill was dismissed, and an appeal taken by the then plaintiffs. Following the death of the incompetent, on July 15, 1937, suggestion thereof was made of record by plaintiff and Mrs. Landwehr, as executrix, substituted as plaintiff.

The record has been reviewed, and we are in accord with the findings of the circuit judge, inclusive of the thought that, except for the subsequent success of the Holland Furnace Company, and reflected in the present value of its stock, this suit would not have been brought.

When the contract was made the affairs of the furnace company were at low ebb, and it was good business management on the part of the guardians to secure the services of Donnelly and Kirchen and shrewd forethought in tying the compensation to the result of efforts they should make in behalf of increase in value of all the stockholdings.

Counsel for plaintiff contend that the contract between the Holland City State Bank, as one of the guardians, and two of its directors to perform services for the estate of the incompetent was contrary to public policy.

The very purpose of the contract negatives the contention. The directors of the bank, engaged to act under stockholdings as directors of the furnace company, brought no conflicting interest and the whole tenor and purpose was to engage their business acumen to the advantage of the furnace company and thereby benefit the estate of the incompetent as a large shareholder. If the relation under the contract be considered in the nature of action by Donnelly and Kirchen under proxy that does not render the contract a nullity.

We are urged to hold that, inasmuch as a corporation can only act through its officers and, as Donnelly and Kirchen were directors of the bank, the co-guardian of the incompetent, and to them had fallen the duty of tending to the interests of the estate of the incompetent in the furnace company, that the contract, under which they obtained shares of stock, was without consideration and, as it bound them to act as directed by the guardians, it was contrary to public policy, in that it was a curb upon the obligation resting upon stockholders to act for the benefit of all shareholders.

The mentioned directors of the bank were not obligated to act as stockholders of the furnace company nor, by proxy, to represent the estate of the incompetent, but were at liberty to assume such position and obligation if they cared to do so, and there was no violation of public policy in the terms of the contract, and there were services for which a consideration could be paid.

We fail to find any agreement under which Donnelly and Kirchen assumed to act in any manner contrary to recognition of the obligation to serve for the best interests of the furnace company and all of its stockholders. In fact that was the purpose to be carried out, and the only one that could possibly be of advantage to the estate of the incompetent.

Upon motion and showing we permitted amendment of the record to disclose events subsequent to entry of the decree, and it has been made to appear that August H. Landwehr died July 15, 1937, leaving a last will, executed October 11, 1924, under which, in case of her survival, Louise Landwehr was constituted sole legatee of his estate; that Mrs. Landwehr survived her husband and the will has been duly admitted to probate. Time for presenting claims against the estate has expired and the estate, to a substantial amount, has become vested in Mrs. Landwehr, unless she declines to take under the will and, therefore, any recovery in this action under the present state of the record will be for the sole benefit of Mrs. Landwehr, who now, as executrix, is the plaintiff herein.

The mentioned motion was opposed on the ground that Mrs. Landwehr has right, until July 15, 1938, to elect not to take under the will, and has expressed her intention not so to take, and if such an election is made then the estate goes to the children and widow.

The showing of the intention of the widow not to take under the will is by her son, on account of the absence of his mother from the United States.

Taking the record as our guide we have a situation where Louise Landwehr is sole legatee, with estate vested, and the suit at present prosecuted by her as executrix to annul the contract she made

as co-guardian of her husband under authority granted by the probate court, and if the decree below is reversed and relief granted plaintiff herein she will be the beneficiary.

While we granted the amendment and have stated the import thereof we do not find it necessary to employ it for the purpose sought, inasmuch as we are of opinion that the decree, under the record in the circuit court, should be affirmed and, therefore, it is immaterial, under such issue, whether the widow elects not to take under the will.

The decree in the circuit is affirmed, with costs to defendants.

BUTZEL, BUSHNELL, SHARPE, CHANDLER, NORTH, and MCALLISTER, JJ., concurred with WIEST, C. J.

POTTER, J. (*dissenting*). The bill of complaint herein was filed against defendants by the next friend and general guardian of August H. Landwehr, to set aside the contract hereinafter discussed, the orders of the probate court approving the same, for enforcement of the surrender of stock in the Holland Furnace Company mentioned in said contract, and to hold in abeyance the orders of the probate court in the Donnelly estate, and for other relief. Defendants answered, denying plaintiffs were entitled to any relief whatever, and claiming the proceedings attacked herein were *res judicata.*

On March 20, 1937, an opinion had been filed by the trial court, and March 29, 1937, the trial court filed a decree therein.

August H. Landwehr died July 15, 1937, and July 31, 1937, a suggestion of death was filed of record. August 3, 1937, Louise Landwehr, as executrix of the estate of August H. Landwehr, deceased, was

substituted as a party plaintiff for the original plaintiffs in the case.

1. This case involves the validity and enforcement of the contract shown in the margin.*

---

* "This Agreement, made this 18th day of November, 1932, by and between Holland City State Bank and Louise Landwehr, guardians of the estate of A. H. Landwehr, mentally incompetent, party of the first part, and Bernard P. Donnelly and Charles Kirchen of Holland, Michigan, parties of the second part, witnesseth as follows:

"1. Party of the first part engages the services of parties of the second part for a period of not less than two years from the date hereof, during which period said parties of the second part are to devote such time and attention to the business and affairs of the Holland Furnace Company as they shall deem necessary and proper to protect the investment of the estate in said company, making such contracts and agreements in their own behalf with said Holland Furnace Company as they may deem necessary and proper for the purpose of carrying out the aforesaid employment.

"2. For such services said second parties shall each receive 5,000 shares of the non par value stock of said Holland Furnace Company on the following basis: 1,500 shares each on the date of the signing of this agreement; 1,000 shares each, three months after the date hereof; 1,000 shares each six months after the date hereof; 1,500 shares each, two years after the date hereof, or at such earlier date as said Holland Furnace Company shall resume payment of dividends on said non par value stock.

"3. Said party of the first part agrees to continue said contract in force and effect during the entire period aforesaid by casting its vote for said parties of the second part as directors of said corporation during said entire period, and by its approval of any reasonable management contract, or other contract or agreement, that parties of the second part may make with said Holland Furnace Company covering their services to it during said period.

"4. Parties of the second part agree that they will, during the time this contract is in effect, vote said stock, as and when received by them, at all meetings of stockholders of said company, in such manner and for such purposes as are agreeable to said party of the first part, and will not during the period covered by this contract, or any extension thereof, sell or dispose of any of the stock received by them pursuant to the terms of this agreement.

"5. Should it be deemed advisable or desirable by the parties hereto to extend the term of employment of said parties of the second part beyond two years from the date hereof, as above provided, said parties may extend this agreement for a period of one, two or three years thereafter, without additional compensation to said parties of the second part, however, unless such additional compensation shall have been agreed upon in writing and approved by the probate court for the county of Ottawa.

"6. No payments in stock as herein provided, shall be made by party of the first part in the event of the death or withdrawal of either of said parties of the second part, their entire compensation

(a)  There can be no valid and binding contract in any case unless the parties occupy a contract status.  There must be mutuality of will and interaction of parties.  There must be privity of contract between the contracting parties and this must proceed from the will of the parties to the contract. *Woods* v. *Ayres,* 39 Mich. 345 (33 Am. Rep. 396).

(b)  A contract cannot exist without parties competent to make it.  *Toledo & S. H. R. Co., for the use of Tillor and Vanderveer,* v. *Lamphear,* 54 Mich. 575.

---

in such event to consist of such stock as shall have been received by them prior to such death or withdrawal, excepting that after six months from the date hereof compensation shall be paid on a *pro rata* basis up to the date of death or withdrawal.

"7. Should parties of the second part receive payment from the Holland Furnace Company, during the period covered by this contract, or any extension thereof, such payment, if made to them in cash, or its equivalent, shall be returned by them in stock to party of the first part at the rate of one share of said Holland Furnace Company non par value stock for each $10 in cash so received; should such payment be made by said company to parties of the second part in non par value stock in said company, as a bonus, pursuant to the terms of any management contract with the said Holland Furnace Company to which said parties, or either of them, shall be a party or otherwise, said stock shall be delivered to said party of the first part to replace such stock as shall have been paid to second parties pursuant to the terms of this agreement; provided, that no such stock shall be required to be returned by each of the parties of the second part over and above 2,500 shares received from party of the first part under the terms and conditions of this agreement.

"8. Parties of the second part shall at all reasonable times furnish to either of said parties of the first part, or their respective attorney or attorneys, such information obtained by them pertaining to the affairs of said Holland Furnace Company as may be necessary to permit parties of the first part to perform their duties as guardians of the said estate in respect to the interest thereof in said company.

"In witness whereof, the parties have hereunto affixed their signatures on the day and year first above written.

"HOLLAND CITY STATE BANK,
"LOUISE LANDWEHR,
"Guardians of the Estate of A. H. Landwehr, Parties of the First Part.

"BERNARD P. DONNELLY,
"CHARLES KIRCHEN,
"Parties of the Second Part."

2. The contract involved purports to have been made by the joint guardians of August H. Landwehr in his lifetime. Such contract may have bound the joint guardians personally, but it did not in any way bind August H. Landwehr or his estate.

(a) It is the duty of this court to look after the interests of infants and incompetents. It must be vigilant to preserve their rights from injury. Though such infants and incompetents may be represented by a guardian *ad litem,* or by a next friend, or by a general guardian, such personal representatives can bind their wards only in strict accordance with the rules framed for their protection. *Sheahan* v. *Wayne Circuit Judge,* 42 Mich. 69.

"The equitable rule is of universal application, that where a person is not equal to protecting himself in the particular case, the court will protect him." *Connelly* v. *Fisher,* 3 Tenn. Ch. 382.

These principles have been repeatedly recognized and applied by this court. *Thayer* v. *Lane,* Walk. Ch. (Mich.) 200; *Chandler* v. *McKinney,* 6 Mich. 217 (74 Am. Dec. 686); *Smith* v. *Smith,* 13 Mich. 258; *Burt* v. *McBain,* 29 Mich. 260; *Damouth* v. *Klock,* 29 Mich. 289; *Walker* v. *Hull,* 35 Mich. 488; *Ballentine* v. *Clark,* 38 Mich. 395; *Cooper* v. *Mayhew,* 40 Mich. 528; *Peck* v. *Kent Circuit Judge,* 98 Mich. 639; *Stoner* v. *Riggs,* 128 Mich. 129; *Schimpf* v. *Wayne Circuit Judge,* 129 Mich. 103; *Frieseke* v. *Frieseke,* 138 Mich. 458; *Erwin* v. *Fay,* 165 Mich. 503; *Curtis* v. *Curtis,* 250 Mich. 105; *Cohen* v. *Home Life Ins. Co.,* 273 Mich. 469; *Weller* v. *Speet,* 275 Mich. 655.

In *Weller* v. *Speet, supra,* a judgment entered against an infant defendant without the appointment of a guardian *ad litem* was set aside by the court on its own motion.

The court is bound to guard the interests of infant litigants, whether protected by their guardian or not. *Wood* v. *Truax,* 39 Mich. 628.

(b)   It is settled law that a guardian of an incompetent person cannot by a contract such as that involved here bind the estate of his ward. *Jones* v. *Brewer,* 1 Pick. (18 Mass.) 314, 317; *Thacher* v. *Dinsmore,* 5 Mass. 299 (4 Am. Dec. 61); *Forster* v. *Fuller,* 6 Mass. 58 (4 Am. Dec. 87); *Wallis* v. *Bardwell,* 126 Mass. 366; *Rollins* v. *Marsh,* 128 Mass. 116; *Sperry* v. *Fanning,* 80 Ill. 371; *Reading* v. *Wilson,* 38 N. J. Eq. 446; *Rice* v. *Paschal,* 59 Ga. 637; *Brown* v. *Eggleston,* 53 Conn. 110, 119 (2 Atl. 321); *Tenney* v. *Evans,* 14 N. H. 343, 351 (40 Am. Dec. 194), all cited with approval in *Lothrop* v. *Duffield,* 134 Mich. 485; *Nelson* v. *Sackett's Estate,* 194 Mich. 450; *Dudex* v. *Sterling Brick Co.,* 237 Mich. 470.

The general rule is that a guardian cannot by his contract bind either the person or estate of his ward. 28 C. J. p. 1165, citing, among a multitude of other cases, *Reynolds* v. *Garber-Buick Co.,* 183 Mich. 157 (L. R. A. 1915C, 362); *Lothrop* v. *Duffield, supra; Roscoe* v. *McDonald,* 101 Mich. 313; *Wood* v. *Truax, supra.*

In *Reynolds* v. *Garber-Buick Co., supra,* the court quoted with approval from Woerner on Guardianship, p. 185, as follows:

"Guardians cannot by their contracts bind either the person or estate of their wards.   Such contracts bind the guardians personally, and recovery must be had in an action against them, not against the ward."

The contract here involved was not made by August H. Landwehr.   There was no privity between him and the other parties to the contract.   Had he been restored to sanity, he could not have been sued

upon the contract. The joint guardians were solely and personally liable thereunder, and such contract could be enforced only against them. *Lothrop* v. *Duffield, supra;* 28 C. J. p. 1165.

3. It is claimed that some binding force and effect was injected into this contract by the *ex parte* order of the probate court.

(a) The joint guardians had no right, power or authority to make the contract in question and by it bind, or attempt to bind, the estate of August H. Landwehr. They were not competent to bind his estate by such a contract.

(b) The probate court of Ottawa county could not confer competency to contract upon the joint guardians where none existed in fact. A similar question was before the court in *Valley National Bank* v. *Crosby,* 108 Iowa, 651 (79 N. W. 383), where it was said:

"The order of the judge on *ex parte* hearing, in the absence of any statute, added nothing to the powers of the administrator. This appears from *Deery* v. *Hamilton,* 41 Iowa, 16, where the executor reported the borrowing of the money, and her report was approved by the court. It was there said: 'This action of the court, without the course prescribed by the statute having been followed by the executrix, did not validate the transaction done without authority. As the law did not authorize the transaction, and prescribe that manner of converting the property of the estate into money, the approval of the court does not defeat its provisions.' * * * The court or judge may validate any act, after done, which might have been authorized to be performed on an *ex parte* hearing. In *Winter* v. *Hite,* 3 Iowa, 142, 144, Wright, J., speaking for the court, said: 'With him (the administrator) it is not a mere question of fact whether he have authority,

for there is no one to give it, but it is a question of law, and the law denies the authority.' The court may direct the exercise of an existing power in a proper case, but additional powers cannot be created by the mere fiat of the court or judge, at least in the absence of any notice to the parties directly concerned.''

(c) The probate court of Ottawa county had no power or authority to make the *ex parte* order relied upon.

(1) The probate court is a court of special and limited jurisdiction. It has only such powers as are conferred upon it by statute or which are necessarily implied from existing statutes. *Detroit, L. & N. R. Co.* v. *Livingston Probate Judge,* 63 Mich. 676; *Grady* v. *Hughes,* 64 Mich. 540; *Rodgers* v. *Huntley,* 166 Mich. 129; *Freeman* v. *Wayne Probate Judge,* 230 Mich. 455; *Burgess* v. *Jackson Circuit Judge,* 249 Mich. 558; *MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich. 563; *In re Meredith's Estate,* 275 Mich. 278 (104 A. L. R. 348).

Being courts of special and limited jurisdiction, deriving all their power and authority from the statute, the question is, What statute is there in the State of Michigan which authorized the probate court of Ottawa county to approve the contract made and entered into in this case?

The sole power and authority of the probate court in relation to stock in private corporations owned by deceased is 3 Comp. Laws 1929, § 15786 (Stat. Ann. § 27.2951), which provides:

''The judges of probate in their respective counties, on the application of a guardian, or of any person interested in the estate of any ward, after such notice to all persons interested therein as the judge of probate shall direct, may authorize or require the

guardian to sell and transfer any stock in public funds, or in any bank or other corporation, or any other personal estate or effects held by him as guardian, and to invest the proceeds of such sale, and also any other moneys in his hands, in real estate, or in any other manner that shall be most for the interest of all concerned therein; and the said probate court may make such further orders, and give such directions, as the case may require, for managing, investing and disposing of the estate and effects in the hands of the guardian.''

An examination of this statute indicates that, upon the application of a guardian, and after notice to all persons interested, the court may direct the sale of stock in corporate enterprises and direct the investment of such proceeds in real estate, or in any other manner, for the interest of all concerned therein, ''and the said probate court may make such further orders, and give such directions, as the case may require, for managing, investing and disposing of the estate and effects in the hands of the guardian.''

Assuming, but not deciding, that this statute is broad enough to authorize the probate court to give directions in relation to the management of the estate in question, or in relation to disposing of the estate, or of some interest therein, such *ex parte* order as was made by the probate court was wholly and absolutely void and conferred no jurisdiction upon the probate court to make the order in question. Such order could be made only after notice to all parties interested,—and in this case no notice at all was given.

(2)   There is no statute in this State which confers upon the probate court any power or authority to predetermine the reasonableness of such a contract as is involved herein.   There is no power and authority granted to the probate court in this State

to change the law, or to make a contract for the parties here sought to be charged,—the estate of August H. Landwehr. No court may change the law or make a contract between the parties. Nor does the judicial power extend to setting aside the plain provisions of the law. *Schild* v. *Railway Co.*, 200 Mich. 614.

4. It is the duty of guardians generally to protect the interests of the ward, and ordinarily they cannot leave the estates at the risk of business disaster. It is their duty to liquidate the estates of their wards. *Ward* v. *Tinkham*, 65 Mich. 695; *Swaine* v. *Hemphill*, 165 Mich. 561 (40 L. R. A. [N. S.] 201).

"If all the *cestuis que trust* are *sui juris*, and capable of acting for themselves, and they desire an executor, administrator, or trustee to continue the business of the testator a few months, in order to preserve it for his son, and the executor acts in accordance with their request, and uses his best skill and judgment in the conduct of the trade, he will be allowed for the loss in his accounts." 1 Perry on Trusts & Trustees (7th Ed.), p. 760, § 454.

This, upon the general theory that it is competent for adult heirs at law to consent, or agree, that the property of the intestate shall be kept together. *French* v. *Davis*, 38 Miss. 167. This is undoubtedly the rule in this State, for here settlement of an estate between the parties interested therein, if they are competent to act for themselves, may be made independent of the probate court. *Brown* v. *Forsche*, 43 Mich. 492.

But here, the estate was that of a person mentally incompetent. He was incapable of protecting himself. He was not in a position to consent to anything. And, therefore, the joint guardians could

protect themselves only by a compliance with the law and cannot unload the contractual liability which they assumed upon the estate of August H. Landwehr when the contract, so far as it attempts to bind his estate, was one which they were not competent to enter into, which was not legal in itself, and to which the *ex parte* order of the probate court could add no validity.

5.  When there is a want of jurisdiction over the parties in the original subject-matter, no matter what formalities may have been taken by the trial court, the action thereof is void because of its want of jurisdiction; and consequently its proceedings may be questioned collaterally, as well as directly. They are of no more value than as though they did not exist. *Jackson City Bank & Trust Co.* v. *Fredrick,* 271 Mich. 538.

The right of the parties contracting with the guardians of the estate of August H. Landwehr to receive compensation at all is, and must be, based upon the personal liability of the guardians who made the contract. Having made the contract, the guardians might submit in their final account to the probate court the question of the validity of the charges made by these parties for services. Such allowances made to the guardian must be based upon *quantum meruit* alone and could not be fixed by his agreements. *Johnson* v. *Leman,* 131 Ill. 609 (23 N. E. 435, 7 L. R. A. 656, 19 Am. St. Rep. 63); *Bott* v. *Barr,* 95 Ind. 243; *Baker* v. *Moor,* 63 Me. 443; *Austin* v. *Munro,* 47 N. Y. 360; *Harding* v. *Evans,* 3 Port. (Ala.) 221 (29 Am. Dec. 255); *Steele* v. *Steele,* 64 Ala. 438 (38 Am. Rep. 15); *Hallock* v. *Smith,* 50 Conn. 127; *Price* v. *McIver,* 25 Tex. 769 (78 Am. Dec. 558); *Valley National Bank* v. *Crosby, supra.*

Upon the hearing of the accounts of the joint guardians, it may be this contract was before the probate court. It does not appear by the record that it was. Upon the hearing of such accounts, the estate was represented by the guardians. The guardians were personally liable upon this contract. The estate was represented by the guardians who were personally interested in unloading the contractual liability, if any, from themselves to the estate of August H. Landwehr. That estate was not a party to the contract. The interests of the guardians were antagonistic to those of the estate on such accounting, and there was in fact no representation of the rights and interests of the estate of August H. Landwehr thereon. The original contract was invalid. The case was disposed of upon the theory the contract was valid and binding upon August H. Landwehr's estate. The authority of the probate court to allow charges of any kind, contractual or other, against the estate of August H. Landwehr is limited by the statute to such charges as were just and reasonable. 3 Comp. Laws 1929, § 15792 (Stat. Ann. § 27.2957). The trial court did not make a determination, finding, order and decree that the charges made by the parties to such contract were just and reasonable. He held the contract governed. The allowance of the amount collected by these contracting parties was in violation of law, and its allowance by the probate court based upon the contract was beyond the jurisdiction of that court.

Decree should be reversed, with costs, and case remanded.